521 So.2d 505 (1988)
Myrtis CLARK
v.
ATLANTIC PAINTING COMPANY, North River Insurance Company, et al.
No. CA-8297.
Court of Appeal of Louisiana, Fourth Circuit.
February 10, 1988.
*506 Earl A. Maxwell, New Orleans, for plaintiff-appellee.
Jan P. Jumonville, Ward & Clesi, New Orleans, for defendants-appellants.
Before GULOTTA, C.J., and KLEES and LOBRANO, JJ.
LOBRANO, Judge.
Ms. Myrtis Clark, appellee, filed this worker's compensation suit against her former employer and its insurer, North River Insurance Co., seeking reinstatement of her compensation benefits. The trial court found that Ms. Clark's disability continued beyond November 22, 1985 (the date the insurer stopped payments) and awarded her supplemental earnings benefits in accordance with La.R.S. 23:1221(3)(a), prior to the 1985 amendment. The court also found North River arbitrary in terminating Ms. Clark's benefits, and awarded her attorney fees and penalties. The insurer has appealed asserting the following errors:
1) The trial court erred in its determination that benefits are due.
2) The trial court erred in awarding attorney fees and penalties.
3) The award of medical benefits is erroneous.
The issue for our review is the correctness of the trial court's factual determination based on the evidence presented.
FACTS
A detailed review of the record, and particularly the medical evidence, shows the following factual scenario. Myrtis Clark was employed as a dry wall finisher by Atlantic Painting Company. She was injured in the course and scope of her employment on September 6, 1985. As part of her job, it was necessary for Ms. Clark to wear stilts. These stilts enabled her to reach the ceiling in order to install the sheet rock. As Ms. Clark entered a bathroom her stilts slipped on the wet floor and she fell, landing on her back. The job supervisor offered to take Ms. Clark to the hospital. When she refused, the supervisor drove her home. Ms. Clark began receiving worker's compensation benefits on September 14, 1985.
Twelve days after the accident, September 18, 1985, Ms. Clark began treatment with Dr. Edmund Landry. Ms. Clark chose Dr. Landry on her own. After taking x-rays and completing a physical examination, Dr. Landry diagnosed Ms. Clark as having sustained a lumbar sprain. He prescribed a conservative treatment of physical therapy and muscle relaxants. Ms. Clark returned to Dr. Landry on October 3, 1985. He found that the claimant was responding well to the physical therapy, and that the lumbar sprain was healing. Dr. Landry again advised her not to return to her usual work. Ms. Clark's third visit was on October 29, 1985, at which time she complained of constant pain in her back. Dr. Landry found improved flexibility, and thought that Ms. Clark's complaints were of a "non-physiologic" nature. Dr. Landry terminated the physical therapy, recommended a bone scan, and told Ms. Clark to remain off work and to return in one week. The subsequent bone scan indicated no abnormalities.
Ms. Clark returned to Dr. Landry on November 14, 1985. The doctor continued to find no objective symptoms to account for Ms. Clark's complaints. Due to her improved condition Dr. Landry told Ms. Clark that she could return to her usual work, and to return to him in two weeks. Based on this report, Ms. Clark's disability *507 benefits were terminated on November 22, 1985.
Ms. Clark returned to work in November, 1985, for Weatherly Productions as a shop helper and prop painter. She earned the same hourly rate with Weatherly as she did with her former employer, Atlantic Painting. She worked for Weatherly Productions for approximately three weeks, 60 hours a week. She did not report this income to North River.
Ms. Clark returned to Dr. Landry on December 27, 1985 and complained of throbbing pain in her lower back and neck. This was the first complaint of neck pain. Dr. Landry found symptoms of thoracic and lumbar sprain, but that her physical examination was essentially normal. He also found increased flexibility and mobility. The doctor felt that she could still return to her usual work, but cautioned her that working 60 hours a week was too much too fast. He suggested that she work 30 to 40 hours a week then slowly increase the hours.
Ms. Clark saw Dr. Landry again on January 10, 1986. During this examination he found no objective symptoms and felt that her back strain was resolved. Ms. Clark told the doctor that she had worked for three days before seeing him but could not take the pressure put on her to perform at her job. Dr. Landry found no reason why Ms. Clark could not continue working. He discharged her as of January 10, 1986.
In February, 1986, Ms. Clark applied for state unemployment benefits. In that application she stated that she had no physical or health condition that would affect her ability to work, and that there was no reason why she could not accept a job as a dry wall finisher if offered.
Ms. Clark was dissatisfied with her progress under Dr. Landry. Upon recommendation by her attorney, she saw Dr. David Aiken, Jr. for a second opinion. On February 20, 1986, Dr. Aiken reviewed the x-rays and bone scan performed by Dr. Landry. He took additional x-rays which revealed no abnormalities. Upon a physical examination he found some tenderness in the claimant's back, no muscle spasms, a full range of motion in the back and no pain with straight leg raises. Because of the continued complaints of intermittent pain, Dr. Aiken recommended that Ms. Clark obtain a CT scan. He made no diagnosis of disability on that date. Ms. Clark continued to find work off and on as a dry wall finisher during March and May of 1986.
On May 12, 1986 Dr. Aiken reviewed the CT scan which was essentially normal with the exception of early hypertrophic spurring of the sacroiliac joint. He diagnosed Ms. Clark as suffering from a chronic lumbar sprain as a result of her fall in September of 1985. The doctor stated that this would limit her capacity to earn money, but that there are probably some jobs that she could hold. This report was sent to the insurer. Upon receipt of this information, the insurer requested that Ms. Clark return to Dr. Landry for an additional medical examination.
This examination occurred on May 28, 1986. Dr. Landry could find no objective symptoms to account for Ms. Clark's complaints. The claimant exhibited normal to above normal mobility and flexibility in her back. Dr. Landry reviewed the x-rays and CT scan taken by Dr. Aiken and found them to be normal. The only problems detected were a minor bulging of a disc and the spurring of the sacroiliac joint. Dr. Landry felt that the spurring was normal, and that the bulging would not be the cause of any pain. Dr. Landry stated that, based on the May 28th examination, the claimant's complaints were not legitimate. Based on this report, North River did not think that Ms. Clark was disabled and refused to reinstate her benefits.
Ms. Clark returned to Dr. Aiken on July 15, 1986. During this time period, she was also obtaining treatment from a chiropractor, Dr. Timothy Kern. Dr. Aiken requested that the claimant stop chiropractic care since constant manipulation of the sprain usually makes it worse. It was Dr. Aiken's opinion that Ms. Clark had reached her maximum medical improvement, and that she had degenerative arthritis of her sacroiliac joint. He opined that the claimant had *508 a 5% to 10% permanent-partial impairment of the total body, and that this disability would completely disable her from heavy labor, such as being a dry wall finisher.
This report containing the assessment of disability was sent to the insurer. After reviewing this report the insurer still denied reinstatement of benefits. This denial was based on the medical information and the statutory language of the workers compensation act which disallows compensation for permanent partial disability when there is less than 50% disability.
Pursuant to La.R.S. 23:1123, Ms. Clark requested and obtained an Independent Medical Examination (IME) by Dr. Essam Elmonshidy on September 29, 1986. Dr. Elmonshidy reviewed a report of the CT scan, but not the CT scan itself, and an incomplete set of x-rays. Using these items and a physical examination it was Dr. Elmonshidy's impression that Ms. Clark was suffering from an old soft tissue injury and possible lumbar disc disease. He felt that the claimant should be restricted from any lifting of heavy objects or frequent bending.
Dr. Elmonshidy's report was sent to North River on October 22, 1986. Since this report did not indicate that the claimant was sufficiently disabled (greater than 50%) to receive compensation, the insurer again refused to reinstate benefits.
North River then instituted an activity check on Ms. Clark. The investigator stated that Ms. Clark showed no signs of any physical ailments or physical defects or deformities. The investigation also showed that Ms. Clark worked at various odd jobs. North River relied on this activity check to reinforce its position that Ms. Clark was not disabled and was not entitled to additional compensation.
Approximately four months before the trial of this matter Ms. Clark worked at Lakefront Arena. Her job was to arrange the chairs for the basketball games and to put the chairs up after the game. And, about three weeks before trial, Ms. Clark worked for Ellis Roofing. At that job she was told that if she could not be there on time or keep up the work pace she would be fired. She worked for Ellis Roofing for two weeks. Ms. Clark did not report the income from any of her jobs to North River.
DETERMINATION OF DISABILITY
The major contested issue in this case is whether Ms. Clark's disability terminated on November 22, 1985, or continued beyond that date.
Ms. Clark presented expert medical opinions that she suffered from chronic lumbar sprain and possible lumbar disc disease. Of importance is the opinion of Dr. Elmorshidy, the independent medical examiner, appointed pursuant to La.R.S. 23:1123 who opined that Ms. Clark should refrain from lifting of heavy objects and frequent bending. La.R.S. 23:1123 provides, in part:
"The medical examiner shall report his conclusions from the examination to the director and to the parties and such report shall be prima facie evidence of the facts therein stated in any subsequent proceedings under this Chapter."
In Green v. Louisiana Coca Cola Bottling Co., 477 So.2d 904 (La.App. 4th Cir. 1985), writ denied 478 So.2d 910 (La.1985) this court pointed out that "... if the trial court concludes that the appointed physician is a disinterested party, his conclusions will be entirely objective and accordingly his opinion will be given significant weight." Id. at 906.
North River, citing Green, supra, argues that the weight accorded the independent opinion can be refuted by other credible evidence. They assert that since Dr. Landry was the treating physician, his opinion refutes the prima facie presumption of Dr. Elmorshidy.
They also argue that Ms. Clark's application for unemployment benefits wherein she stated she had no physical or health conditions which would prevent her from working, coupled with her intermittent jobs, support the conclusion opined by Dr. Landry that Ms. Clark was no longer disabled.
While we agree with the legal soundness of North River's arguments, from a factual standpoint we cannot say the trial court *509 was clearly wrong in its finding of disability. Dr. Aiken's opinion reinforced that of Dr. Elmorshidy. Dr. Aiken was also a treating physician. And, although the trial court may take into consideration the fact that a claimant designated he was available for work when making applications for unemployment the weight accorded that evidence is certainly within the trial court's great discretion. The ultimate factual determinations of disability and length thereof made by the trial court are entitled to great weight by this court, and will not be disturbed absent manifest error. Bailey v. Zurich American Insurance Company, 503 So.2d 611 (La.App. 4th Cir.1987); Thomas v. Elder Pallet and Lumber Sales, Inc., 493 So.2d 1267 (La.App. 3rd Cir.1986), writ denied, 497 So.2d 312.
AWARD OF BENEFITS
For her continuing disability the trial court awarded Ms. Clark supplemental earnings benefits based on zero earnings from the date of termination, November 22, 1985, to be calculated in accordance with R.S. 23:1221(3)(a) prior to its amendments by Act 1985, No. 926, Sec. 1, effective January 1, 1986. Prior to the 1985 amendment, R.S. 23:1221(3)(a) provided:
"(a) For injury resulting in the employee's inability to earn wages equal to ninety per cent or more of wages at time of injury, supplemental earnings benefits equal to seventy-four percent of the difference between ninety percent of the average monthly wages at time of injury and average monthly wages earned or average monthly wages the employee is able to earn in any month thereafter in any employment or self-employment, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of the injury was particularly fitted by reason of education, training, and experience, such comparison to be made on a monthly basis. Average monthly wages shall be computed as four and three tenths times the wages as defined in R.S. 23:1021(10)."
"To qualify for supplemental earnings benefits under La.R.S. 23:1221(3)(a) a plaintiff is required to prove by a preponderance of the evidence that a work related injury resulted in her inability to earn wages equal to 90% or more of her wages at the time of the injury." Valley v. American Insurance Co., 510 So.2d 449, 454 (La.App. 3rd Cir.1987) citing, Gaspard v. St. Paul Fire and Marine Insurance Co., 483 So.2d 1037 (La.App. 3rd Cir.1985). The Court determined that Ms. Clark was unable to earn 90% or more of her pre-injury wages. We find no error in this determination. However, for the following reasons we find the trial court erred in determining that the supplemental earnings benefits were to be calculated at "zero earnings".
Ms. Clark testified that she held down various jobs since November 22, 1985. She claimed that she was in pain when she worked, and that she was discharged from the jobs due to her back pain and inability to perform the required tasks. The post-injury wages are to be calculated under La. R.S. 23:1221(3)(b), which states:
"(b) For purposes of Subparagraph (3)(a), of this Paragraph, the amount determined to be the wages the employee is able to earn in any month shall in no case be less than the sums actually received by the employee, including, but not limited to, earnings from odd-lot employment, sheltered employment, and employment while working in any pain." (emphasis added)
This provision is clear that the wages Ms. Clark earned on her various jobs should have been included in the computation of her supplemental earnings benefits.
Subparagraph (3)(c)(ii) allows for zero earnings if the claimant is not engaged in any employment and can prove by "... clear and convincing evidence, unaided by any presumption of disability, that solely as a consequence of substantial pain, the employee cannot perform employment offered, tendered, otherwise proven to be available to him...." Ms. Clark was in fact engaged in employment, and there is no proof that she cannot perform any employment, *510 therefore this paragraph is not applicable.
The trial court concluded that benefits should be awarded at zero earnings. This is error. There is evidence that Ms. Clark was employed at various times during her disability. It is necessary that a determination be made on the average monthly wage Ms. Clark earned, or is capable of earning. See, La.R.S. 23:1221(3)(a).
Further, there is evidence she applied for unemployment benefits, but there is no evidence whether she received any. North River is entitled to a credit if she did. La.R.S. 23:1225(B).
We therefore remand for a determination by the trial court on this limited issue consistent with the opinion expressed herein. The trial court may hear additional evidence on this limited issue.
PENALTIES AND ATTORNEY'S FEES
The decision to award attorney's fees and penalties is one of fact and the trial court's findings on this issue should not be disturbed on appeal absent a showing of manifest error. Washington v. Southern Baptist Hospital, 506 So.2d 144 (La.App. 4th Cir.1987); Green v. Archer Daniel Midlands, 503 So.2d 641 (La.App. 4th Cir.1987). For the following reasons, we determine the trial court committed manifest error in assessing attorney's fees and penalties.
Dr. Landry released Ms. Clark for work on November 14, 1985. Based on this information, North River terminated her compensation benefits on November 22, 1985. Dr. Landry discharged Ms. Clark from his care on January 15, 1986. On January 24, 1986 North River sent Ms. Clark's attorney a letter stating the reasons why further compensation was not due.
Upon referral by her attorney, Ms. Clark saw Dr. Aiken in February 1986. No diagnosis of disability was made at that time. On April 3, 1986 counsel for Ms. Clark sent the insurer a copy of Dr. Aiken's February report and a request for a CT scan. The insurance company authorized the CT scan. On May 20, 1986 another report from Dr. Aiken was sent to the insurer. This report stated that Ms. Clark "has a chronic lumbar sprain as a result of her fall in September of 1985. It is certainly limiting her capacity to earn money, but there are probably some jobs she could hold down with it."
Upon receipt of this adverse report by Dr. Aiken, the insurer sent Ms. Clark to Dr. Landry for an examination on May 28, 1986. Dr. Landry reviewed the x-rays and the CT scan performed by Dr. Aiken and found no abnormalities. After a physical examination, Dr. Landry found no objective symptoms to account for Ms. Clark's complaints. It was his opinion that Ms. Clark was able to work in a fashion consistent with her age and in her specific condition. He felt that Ms. Clark's complaints were not legitimate. North River again refused to reinstate compensation benefits.
Subsequent examinations and reports by Drs. Aiken and Elmorshidy again prompted requests by Ms. Clark's attorney to reinstate benefits. In response, North River placed Ms. Clark under surveillance, the results of which indicated the claimant had no disability. In addition, the North River claims' representative testified she relied on the provisions of La.R.S. 23:1221(4)(q) which provides in part:
"No benefits shall be awarded or payable in this Paragraph unless anatomical loss of use ... is greater than fifty percent as established in American Medical Association Guides to the Evaluation of Permanent Impairment...."

Since Dr. Elmorshidy's opinion gave no percentage of disability, and Dr. Aiken's opinion was 5% to 10%, the claim's representative concluded she was justified in her reliance on the above statute.
An assessment of penalties and attorney fees is proper unless the employee's rights to benefits are reasonably controverted. Theriot v. American Employees Insurance Co., 482 So.2d 648 (La.App. 3rd Cir.1986). The claimant's rights to benefits are reasonably controverted when the insurer has sufficient factual and medical evidence to counter the information presented by the claimant. Theriot, supra.
*511 We conclude that the conflicting medical opinions, the factual observations of North River, and their reliance on a reasonable interpretation of the compensation statute support a finding that they were not arbitrary and capricious. We find the trial court's holding in this regard manifestly erroneous, and reverse the penalties and attorney fee award.
MEDICAL EXPENSES
The trial court awarded Ms. Clark all past and future medical expenses incurred with respect to her injury. Specifically, the judgment includes $2,956.00, due Dr. Timothy Kern, a chiropractor.
North River argues this award was improper because there was no admissable evidence to substantiate it. The report of Dr. Kern was admitted into evidence, over objections, without any foundation being laid. Dr. Kern was not called as a witness, and although there were stipulations as to other reports, there was none with respect to this one.
Further, the detailed medical bill of Dr. Kern was never admitted into evidence, but was proffered by Ms. Clark. The trial court was correct in refusing to admit it, but was in error in considering it when awarding medical expenses.
Ms. Clark, by way of answering the appeal, argues that in a worker's compensation case, the technical rules of evidence are not strictly adhered to and the trial court should have allowed the itemized statement in evidence, citing La.R.S. 23:1317(A).
While we agree that in cases of this type, a trial court is not bound to follow technical evidentiary rules, hearsay evidence that is clearly inadmissable should not be considered. Highstreet v. Regency Apartment Hotel, 337 So.2d 536 (La.App. 4th Cir.1976), writ denied, 340 So.2d 994 (La. 1977). We therefore reverse the award of $2,956.00 to Dr. Kern.
WORKMEN'S COMPENSATION OFFICE RECOMMENDATION
We agree with Ms. Clark that the trial court erred in not admitting into evidence the recommendation of the worker's compensation office. Since La.R.S. 23:1310.1 is procedural in nature, it should be applied retroactively and thus is applicable to this case. However, since "... the recommendation when admitted shall not be accorded any presumption of correctness as to the facts or the law," the failure to admit same is harmless error. La.R.S. 23:1310.1(A).
FRIVOLOUS APPEAL
Clearly, this is not a frivolous appeal by North River. There were serious questions of fact and law. We deny Ms. Clark's request for damages.
DECREE
For the foregoing reasons, we affirm that portion of the trial court judgment awarding Ms. Clark supplementary earnings benefits beginning November 22, 1985.
We reverse that portion of the judgment awarding penalties and attorney's fees.
We reverse that portion of the judgment awarding Dr. Kern's medical expenses of $2,956.00.
We remand for the limited purpose of determining Ms. Clark's benefits in accordance with La.R.S. 23:1221(3)(a).
AFFIRMED IN PART, REVERSED AND REMANDED IN PART, REMANDED IN PART.