568 So.2d 1151 (1990)
Elray CASSARD
v.
AMERICAN GENERAL FIRE & CASUALTY COMPANY, A SUBSIDIARY OF AMERICAN GENERAL CORPORATION.
No. 90-CA-246.
Court of Appeal of Louisiana, Fifth Circuit.
October 11, 1990.
*1152 Roger I. Dallam, Greenberg & Dallam, Gretna, for plaintiff/appellee.
Thomas G. Buck, Metairie, for defendant/appellant.
Before CHEHARDY, KLIEBERT and GOTHARD, JJ.
GOTHARD, Judge.
In this worker's compensation case, the compensation carrier has appealed judgment in favor of the injured worker and the claimant has answered the appeal.
In August, 1983 Elray Cassard received multiple injuries when he fell from a roof that he was engaged in repairing. He received weekly compensation benefits based on total disability from the time of the accident until June, 1988, when American General Fire and Casualty Company, the employer's insurer, reduced the benefits to supplemental earnings. The reduction was based on the treating physician's opinion that Cassard could return to light work with restrictions on climbing, repetitive bending, stooping, squatting, and lifting weights in excess of thirty pounds. The employee had been referred to a rehabilitation agency for assistance in obtaining training and employment, with no really positive results. In April, 1989, Cassard began working as a janitor for his parish church at a salary of $600.00 per month.
The insurer rejected a recommendation of the state Office of Worker's Compensation which would award Cassard weekly supplemental earnings benefits of $230.00 (the maximum compensation for injuries occurring between July 1, 1983 and August 31, 1983), plus all medical expenses. Cassard filed suit on October 7, 1988. After trial of the merits, the court ruled from the bench that Cassard was totally disabled under the Act and that employment was not available to him because employers are unwilling to hire injured workers who are litigating a compensation claim.
A judgment, signed on October 18, 1989, awarded Cassard weekly compensation of $230.00 from June 22, 1988 through March 31, 1989 and supplemental earnings benefits calculated on a weekly benefit of $230.00, subject to weekly earnings of $138.46, from April 1, 1989 for as long as Cassard is employed at $600.00 per month but no longer than 520 weeks; both awards are subject to credit for any benefits actually paid and legal interest from due date of each weekly benefit until paid. The judgment also provided for all medical benefits *1153 but denied the plaintiff's demand for penalties and attorney's fees.
The insurer raises the following issues: (1) whether the court may find a plaintiff totally disabled when the treating physicians say he is able to work and he is actually holding a job; (2) whether a worker may be awarded total disability benefits for a period when he was able to work but chose not to; and (3) whether the worker's supplemental earnings benefits should be based upon wages that are less than he is actually able to earn. In answering the appeal the plaintiff seeks penalties and attorney's fees.

Total disability
The appellant strongly opposes the court's ruling that, "... [T]he plaintiff in this case, Mr. Cassard, is totally disabled under the meaning of the Act.... I believe at this time that he is disabled, totally disabled." Counsel argues that Cassard could not be declared totally disabled when he was found to be medically able to work and was working at time of trial. The court did not specify "temporary" or "permanent" total disability in his oral ruling or in the judgment.
The factual determination of disability made by the trial court is entitled to great weight and will not be disturbed in the absence of manifest error. Clark v. Atlantic Painting Co., 521 So.2d 505 (La. App. 4th Cir.1988); Rosell v. ESCO, 549 So.2d 840 (La.1989).
Dr. Robert Fleming, an orthopedic surgeon, testified for the plaintiff as an expert and as his treating physician, having treated him since the day of the accident. Of the many injuries Cassard incurred, including a fractured skull, only the injuries to Cassard's left leg and left hand were continuing to give him problems at time of trial. Dr. Fleming performed surgery, placing a pin in the left hand and effecting "multiple internal fixation" of the left tibia. Dr. Fleming stated that as of the time of trial Cassard had pain and grinding in the left knee, pain from the knee to the ankle, and occasional back pain. His complaints were compatible with traumatic arthritis but, in the physician's opinion, removal of the knee cap or a total knee replacement was not indicated. An arthroscopic examination of the knee and hand was performed in September, 1988, which confirmed arthritis. X-rays of the knee and ankle, taken in July, 1989, revealed progression of arthritis in the ankle, as a small spur appeared on the talus, a bond in the ankle joint. In an X-ray taken a few months later a small calcification in the soft tissues of his left leg appeared, for which surgery was being considered. Dr. Fleming felt that Cassard's complaints were legitimate and coincided with the physical findings. He assessed the disability in the left leg at 33%.
Beginning in October, 1987 the physician recommended that Cassard undertake sedentary employment within his restrictions, where he would be able to sit and stand alternately. As long as he did not stand continually, his knee and ankle pain would not be disabling. The physician said he thought employment would be beneficial to the plaintiff, as it would take his mind off his problem.
Dr. William S. Brasted testified as an expert in behavioral psychology and as the plaintiff's treating psychologist. He had seen Cassard on an intermittent basis since October, 1984, when he was referred because of depression. Since Cassard began the job with the church he had become more anxious and agitated because he was unable to perform all the tasks and had to enlist the help of his wife and son in doing them. Dr. Brasted's impression was that he was extremely motivated to return to work and that on the occasions when employment appeared to be possible his psychological symptoms decreased. He stated that from a psychological standpoint Cassard would be much better off if he were working in a secure job situation that suited his physical limitations.
The plaintiff's counsel assumes that the court found Cassard to be temporarily totally disabled under the odd-lot doctrine, which was viable under the statute in effect at the time of the injury. Thomas v. Elder Pallet & Lumber Sales, Inc., 493 So.2d 1267 (La.App. 3rd Cir.1986), writ denied *1154 497 So.2d 312 (La.1986). Compensation for permanent total disability was disallowed under the statute if the claimant was engaging in or physically able to engage in any employment, including all odd-lot employment.[1]
We find that the trial judge was in error insofar as he found the plaintiff totally disabled. The record indicates clearly that he is disabled to the extent that he is unable to return to his former job as a roofer. However, the treating physician and psychologist both were of the opinion that he was able to perform light work and that it would be therapeutic for him to do so. The orthopedist's testimony indicates that the leg is permanently damaged and there is nothing in the record to suggest that it will improve, as arthritis has begun to progress. Consequently, the injury does not fit temporary total disability. On the other hand, because he can at least perform odd-lot work, he cannot be declared permanently totally disabled. Furthermore, as his leg disability was assessed at less than 50%, he does not qualify for permanent partial disability benefits.
Cassard's case does fit the statutory requirements for supplemental earning benefits, as set out in R.S. 23:1221(3).[2] Before *1155 his accident Cassard earned $400.00 per week, or $1,720.00 per month in roofing, to which he is unable to return, and is now earning $600.00 per month with the help of his wife and son. Before March, 1989 he had no gainful employment.

Availability of suitable employment
Cassard was 46 years old at trial. He had completed the seventh grade and had attempted but failed to obtain a high school equivalency diploma. He testified that he could read and write "a little bit." His entire work experience was in skilled manual labor: roofing, sheet metal work, ship fitting, welding, and carpentry.
The defendants maintain that before being hired by the church, Cassard chose not to work, is now capable of earning more than $600.00 per month, and has failed to cooperate with the rehabilitation counselors. Cassard was furnished lists of employment opportunities but did not pursue them. Susan Elsworth, an employee of General Rehabilitation Services, was qualified as an expert in rehabilitation counseling and testified for the defendant. She began seeing Cassard in January, 1988. Other counselors had worked with Cassard in 1987 and he had received some training as a locksmith. Dr. Fleming's testimony indicated that bench work as a locksmith fit his physical limitations, but that outside work, where he would have to climb, squat, or stoop, would be inappropriate. Ms. Elsworth admitted that the counselor who preceded her had been unable to find employment for Cassard in shop locksmithing. However, Ms. Elsworth testified that she had identified 65 positions with wages from $400.00 to $876.00 per week which fit his physical limitations. She had mailed the lists to him, but Cassard reported to her that he followed up on only six leads. The types of jobs listed included cashier, telephone operator, telephone solicitor, neck tie inspector, paper cutter, security officer, and counter attendant. When asked how she identified the positions she explained that she contacted half the prospective employers by telephone and gathered the remaining leads from the newspaper or the job service. In her telephone calls regarding openings she inquired as to the educational requirements and whether a person with a physical handicap was eligible. She did not record the names of the persons she spoke to, nor did she give them Cassard's name or disability. Cassard and his wife, who accompanied her husband in attempting to contact the businesses listed, both testified they had understood Ms. Elsworth had told employers specifically about him and learned she had not. Some employers accepted applications from him, while others told him there was nothing available once they learned of his disability. He was offered no position other than the one he located for himself at the church.
The provisions of the worker's compensation law must be given a liberal interpretation in favor of the claimant. Lester v. Southern Cas. Ins. Co., 466 So.2d 25 (La.1985). For entitlement to supplemental earnings benefit the employee must prove by a preponderance of the evidence that his work-related injury has resulted in his inability to earn 90% of his previous wages. The trial court should take into account all factors which might bear on his ability to earn a wage. Daigle v. Sherwin-Williams Co., 545 So.2d 1005 (La.1989). Even though it might appear that Cassard was overly dependent upon the rehabilitation agency to find a job for him, when we consider his educational, psychological, and physical limitations we cannot say that the trial judge was clearly wrong in finding that the plaintiff carried his burden of proof.
Cassard's previous wage of $400 per week is not questioned. If the employer wishes to contend that the employee is capable of earning a higher wage, he must *1156 prove, "that the employee is physically able to perform a certain job and that the job was offered to the employee or that the job was available to the employee in his or the employer's community or reasonable geographic region." Daigle v. Sherwin-Williams Co., supra; Culotta v. Great Atlantic & Pacific Tea, 524 So.2d 259 (La. App. 5th Cir.1988), writ denied, 530 So.2d 88 (La.1988). The insurer has made no such showing, and we hold that the plaintiff is entitled to supplemental earnings benefits, beginning June 22, 1988.
Calculation of supplemental earnings benefits
The formula for calculation of benefits under LSA-R.S. 23:1221(3) is "sixty-six and two-thirds percent of the difference between the average monthly wages at time of injury and average monthly wages earned or average monthly wages the employee is able to earn in any month thereafter...." For Cassard the calculation is as follows:

past wages, per week $400.00
wages he earns presently or $139.53 ($600 divided
is able to earn, weekly by 4.3)
 ---------------------
 difference $260.47
 66 2/3 × $260.47 = $173.73
supplemental earnings benefit = $173.73

That benefit shall apply from April 1, 1989, when he became employed, until the statutory entitlement period of 520 weeks has elapsed or there is a change in his earnings.
We had determined that Cassard was not totally disabled as of June 22, 1988; consequently supplemental earnings benefits are applicable to the period of June 22, 1988 through March 31, 1989, when he was not employed. LSA-R.S. 23:1221(3)(c)(i). We have no basis for determining what he was able to earn during that period, as no employment which he was physically able to perform had been offered to him or proven to be available to him in the area. Accordingly, we award him the maximum weekly compensation provided in LSA-R.S. 23:1202 A(2), which is $230.00 for the period in which Cassard's injury was incurred. The award is subject to a credit for any amounts previously paid by the employer, together with legal interest on each weekly benefit from date due until paid.

Penalties and attorney's fees
The trial judge's stated reasons for denying the plaintiff's request for penalties and attorney's fees were that the company had continued paying the bills and had made some effort to retrain him and offer rehabilitation services. In light of Dr. Fleming's report, there was a reasonable basis for the insurer's belief that the plaintiff was able to undertake some employment. Ross v. St. Paul Fire & Marine Ins. Co., 556 So.2d 891 (La.App. 2nd Cir. 1990). Accordingly, we affirm the judgment insofar as it denies penalties and attorney's fees.

Summary
The judgment of the trial court is reversed insofar as it holds the plaintiff to be totally disabled. The plaintiff is instead deemed to be unable because of a work-related injury to earn 90% of his wages at time of injury and entitled to weekly supplemental earnings benefits, beginning June 22, 1988.
The judgment is affirmed insofar as it awards the plaintiff a weekly compensation benefit of $230.00 for the period of June 22, 1988 through March 31, 1989, together with legal interest on each weekly benefit from date due until paid, subject to a credit for any benefit actually paid.
The judgment is revised insofar as it awards the plaintiff, Elray Cassard, a weekly supplemental earnings benefit calculated upon a weekly benefit of $230.00, subject to weekly earnings of $138.46 for the period from April 1, 1989 for as long as he is employed at a monthly wage of $600.00. Instead, the insurer shall pay to Elray Cassard supplemental earnings benefits of $173.73 weekly, subject to a credit for any benefit actually paid, together with legal interest on each weekly benefit from date due until paid, for the period from April 1, 1989 until the statutory entitlement *1157 period of 520 weeks has elapsed or there is a change in his earnings.
In all other respects the judgment appealed from is affirmed.
AFFIRMED IN PART, REVERSED IN PART, REVISED IN PART, AND RENDERED.
NOTES
[1] R.S. 23:1221

(1) Temporary total. For injury producing temporary total disability of an employee to engage in any self-employment or gainful occupation for wages whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, or experience, sixty-six and two-thirds percent of wages during the period of such disability.
(2) Permanent total.
(a) For any injury producing permanent total disability of an employee to engage in any self-employment or occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured, and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, and experience, sixty-six and two-thirds percent of wages during the period of such disability.
(b) For purposes of Subparagraph (2)(a) of this Paragraph, compensation for permanent total disability shall not be awarded if the employee is engaged in any employment or self-employment including but not limited to any and all odd-lot employment, sheltered employment, or employment while working in any pain.
(c) For purposes of Subparagraph (2)(a) of this Paragraph, whenever the employee is not engaged in any employment or self-employment as described in Subparagraph (2)(b) of this Paragraph, compensation for permanent total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, including, but not limited to, any and all odd-lot employment, sheltered employment, or employment while working in any pain, notwithstanding the location or availability of any such employment or self-employment. [Emphasis supplied.]
(d) Notwithstanding any judgment or determination that an employee is permanently and totally disabled, if such employee subsequently has or receives any earnings, including, but not limited to, earnings from odd-lot employment, sheltered employment, or employment while working in any pain, such employee shall not receive benefits pursuant to this Paragraph, but may receive benefits computed pursuant to Paragraph (3) of this Section, if applicable.
. . . . .
[2] R.S. 23:1221(3)

(a) For injury resulting in the employee's inability to earn wages equal to ninety per cent or more of wages at time of injury, supplemental earnings benefits equal to sixty-six and two-thirds percent of the difference between the average monthly wages at time of injury and average monthly wages earned or average monthly wages the employee is able to earn in any month thereafter in any employment or self-employment, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of the injury was particularly fitted by reason of education, training, and experience, such comparison to be made on a monthly basis. Average monthly wages shall be computed as four and three-tenths times the wages as defined in R.S. 23:1021(10).
(b) For purposes of Subparagraph (3)(a), of this Paragraph, the amount determined to be the wages the employee is able to earn in any month shall in no case be less than the sums actually received by the employee, including but not limited to, earnings from odd-lot employment, sheltered employment, and employment while working in any pain.
(c)(i) Notwithstanding the provisions of Subparagraph (b) of this Paragraph, for purposes of Subparagraph (a) of this Paragraph, if the employee is not engaged in any employment or self-employment, as described in Subparagraph (b) of this Paragraph, or is earning wages less than the employee is able to earn, the amount determined to be the wages the employee is able to earn in any month shall in no case be less than the sum the employee would have earned in any employment or self-employment, as described in Subparagraph (b) of this Paragraph, which he was physically able to perform, and (1) which he was offered or tendered by the employer or any other employer, or (2) which is proven available to the employee in the employee's or employer's community or reasonable geographic region.