556 So.2d 891 (1990)
Fred ROSS, Jr., Appellee,
v.
ST. PAUL FIRE & MARINE INSURANCE COMPANY, Appellant.
No. 21106-CA.
Court of Appeals of Louisiana, Second Circuit.
January 24, 1990.
Rehearings Denied February 22, 1990.
*893 Mayer, Smith & Roberts by Ben Marshall, Jr., Shreveport, for appellant.
Ike F. Hawkins, Jr., Shreveport, for appellee.
Before NORRIS, LINDSAY and HIGHTOWER, JJ.
NORRIS, Judge.
In this workers compensation case, Fred Ross, Jr., a 36-year old manual laborer for B.J. Andrews Construction Company, sustained a serious injury to four fingers of his dominant right hand while in the course and scope of his employment. Ross's fingers were severely crushed and required extensive surgery by Dr. John Ferrell. He began receiving workers compensation benefits in the amount of $248 per week from defendant, St. Paul Fire & Marine Insurance Company. He underwent almost eight months of treatment before Dr. Ferrell declared him able to return to work on a trial basis. Defendant ceased paying benefits and plaintiff eventually sued. The trial court found plaintiff temporarily totally disabled and awarded him weekly benefits for the duration of the disability and all past due weekly benefits with legal interest. The insurer appeals and plaintiff has answered requesting penalties and attorney fees. For the reasons expressed, we reverse the award of temporary total benefits and render a judgment awarding plaintiff supplemental earnings benefits ("SEB"). We also render judgment in favor of the plaintiff for penalties and attorney fees.

FACTS
On September 28, 1984, Ross was employed as a manual laborer earning $9.70 an hour by B.J. Andrews Construction Company. He was in the process of removing a pin from a trough on a cement truck when a co-employee accidently flipped the trough down, crushing Ross's right fingers. He was taken to Dr. Ferrell, an orthopedic surgeon, where he underwent surgery and was released from the hospital on October 1.
On November 8, 1984, Dr. Ferrell reported that Ross was making slow progress. On December 5, he noted that Ross had been riding horses and doing well. On December 28, he reported that Ross was improving, although slowly. Dr. Ferrell next saw Ross on January 18, 1985 and recommended that he undergo physical therapy. On January 25, Dr. Ferrell found little progress from the last visit. On April 11, Dr. Ferrell saw Ross and noted that his injury was again improving and that he had recently won a horse riding and roping contest. On April 23, Dr. Ferrell prepared a document allowing Ross to return to his previous occupation on a trial basis by May 11. He testified that Ross mentioned to him that he wanted to work and that returning to work would help him functionally. However, in making this suggestion, Dr. Ferrell relied on mistaken information that Ross's old job was available to him. On the basis of Dr. Ferrell's document, defendant terminated the benefits on May 30, 1985.
At his lawyer's request, on February 19, 1986 Ross was evaluated by Dr. John Valiulis, a plastic and reconstructive surgeon. Using the guidelines of the AMA Guides to the Evaluation of Permanent Impairment, Dr. Valiulis carefully measured the percentage of disability in each of Ross's injured fingers and assessed plaintiff's overall hand disability at 58%. Dr. Valiulis saw Ross once more on July 13, 1987, and noted that there was no improvement in the motion and dexterity of his fingers.
On August 5, 1986, Ross filed suit against defendant seeking past due benefits with legal interest, penalties and attorney *894 fees. On August 26, Ross's counsel sent defendant Dr. Valiulis's report assessing Ross's hand disability at 58% and requested that it resume payments for permanent partial disability. Defendant, relying on Dr. Ferrell's report dated April 23, 1985, took no action.
The trial was held on November 5, 1987. Ross testified at trial that prior to his injury he had done farm, ranch, and construction work. All of his work history involved manual labor. He testified that he had been unemployed since the injury. He admitted to trying to bale hay and pen cows after the accident but complained that after 30 minutes of working his hand would "lock up," lose its strength and he would have to quit working. This was corroborated by other witnesses who were well acquainted with plaintiff.
B.J. Andrews testified that Ross worked for him on at least five occasions since the accident, hauling hay and working the cattle. He also testified that since the accident he had seen Ross hauling hay for his neighbors. Andrews noted several times that Ross was a good worker and "liked to get the job done." However, on cross examination, Andrews admitted that he had not actually seen Ross working for his neighbors, but had heard this from others. He also testified that Ross's brother, not Ross himself, had worked for him since the accident and that Ross had worked for his brother. Betty Andrews, B.J. Andrews's wife, testified that after the accident she once saw plaintiff opening the gate for cows with his right hand at the Livestock Auction. Ross denied working at the Livestock Auction or for Andrews's neighbors, but admitted working on one occasion for Andrews since the injury.
Dr. Ferrell testified by deposition in 1987 that although the plaintiff could functionally grasp and release objects, he had a problem with grip strength and motion in his fingers.
Dr. Valiulis testified by deposition that Ross's fingers were bent in a claw fashion and because of the injury he could not normally grasp objects. He testified that surgery could not improve Ross's hand injury.
The trial court found that because of the injury Ross was unable to pursue his only gainful occupation as a common laborer. It therefore held that he was temporarily totally disabled and entitled to workers compensation benefits with legal interest from May 30, 1985 and continuing for the duration of the disability. The court refused to award penalties and attorney fees. Judgment in accordance with the trial court's written ruling was signed and filed on January 13, 1989.
Defendant has appealed, claiming that the trial court erred in awarding plaintiff temporary total benefits after May 30, 1985, the point at which he allegedly reached maximum medical improvement. Defendant also contends that plaintiff failed to prove he was entitled to any benefits under the remaining three subsections of LSA-R.S. 23:1221 after May 30, 1985. Plaintiff answered the appeal urging that the trial court erred in refusing to award him penalties and attorney fees.

DISCUSSION
The trial court found plaintiff temporarily totally disabled under R.S. 23:1221(1), which at the time of injury provided:
Compensation shall be paid under this Chapter in accordance with the following schedule of payments:
(1) Temporary total. For injury producing temporary total disability of an employee to engage in any self-employment or gainful occupation for wages whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, or experience, sixty-six and two-thirds percent of wages during the period of such disability.
The issue of disability is to be determined by the totality of the evidence, including both lay and medical testimony. Augustine v. Courtney Const. Co., Etc., *895 405 So.2d 579 (La.App.3d Cir.1981), writ denied 407 So.2d 735 (La.1981). It is well settled that the conclusions of the trial court are entitled to great weight and are not to be reversed unless manifestly erroneous. Brewster v. Manville Forest Products Corp., 469 So.2d 340 (La.App.2d Cir. 1985). When an injured manual laborer is disabled at the time of trial and is still undergoing medical testing with an indefinite recovery period, yet it appears reasonably certain he will be able to engage in the same or other gainful occupations within a foreseeable period of time, he is entitled to temporary total benefits. See Brewster, supra; Thomas v. Elder Pallet and Lumber Sales, Inc., 493 So.2d 1267 (La.App.3d Cir.1986); Lang Pham v. Delta Petroleum Co., 503 So.2d 149 (La.App.5th Cir.1987). However, when a satisfactory degree of healing is reached, the claimant's condition will be deemed "permanent" and he will no longer be entitled to temporary total disability benefits. See Johnson v. Monroe Pulpwood Co., 505 So.2d 862 (La.App.2d Cir.1987).
In the present case, Ross at the time of his injury was employed as a manual laborer. He testified that he has been unemployed since the accident and unable to work for an extended period of time because of the injury to his right hand. According to Ross, after 25 to 30 minutes of work, his right hand will lock up in pain and force him to quit working.
Dr. Ferrell testified that from May 1985 to June 1986 there was no noticeable improvement in Ross's injury. Dr. Ferrell noted in June 1986 he did not believe that there would be any long term change in Ross's condition and that the impairment would be permanent.
Dr. Valiulis saw Ross in February 1986 and in July 1987. According to Dr. Valiulis, in July 1987 the motion and dexterity in Ross's injured fingers had not changed and there was "very, very little improvement" in the injury.
After carefully reviewing the record, we believe that the trial court was clearly wrong in finding that Ross was temporarily disabled subsequent to May 30, 1985. The evidence shows that as of May 30, 1985, plaintiff was no longer in a healing and recovery period. All the expert testimony indicated that plaintiff's injury had stabilized by that date and had not significantly improved since. Therefore, his disability cannot be considered "temporary" and the trial court was clearly wrong in so holding. The judgment must be reversed in this respect.
We now consider whether plaintiff was entitled to relief under any other subsection of R.S. 23:1221, as prayed for in his petition. The burden of proof required for establishing permanent total disability is clear and convincing evidence. The law providing for permanent total disability benefits is inapplicable if the plaintiff is physically able to engage in any employment or self-employment, including any and all odd-lot employment, sheltered employment, and employment while working in any pain, notwithstanding the location or availability of any such employment or self-employment. R.S. 23:1221(3). The evidence shows that after the accident Ross has attempted to haul hay and pen cattle, though only for brief periods of time and in pain. Dr. Valiulis testified that he is probably able to sweep, dust and work in a gas station. Ross testified that he believes he is able to drive a car and a farm tractor, and pump gasoline. It is clear that Ross's injury does not fit within the narrow purview of the statute defining permanent total disability.
Because it awarded temporary total benefits, the trial court did not consider whether plaintiff was entitled to permanent partial benefits pursuant to R.S. 23:1221(4). This section provides compensation when the plaintiff's permanent hand disability is greater than 50% as established in the American Medical Association Guides to the Evaluation of Permanent Impairment. If the permanent hand disability is greater than 50%, the plaintiff is entitled to sixty-six and two-thirds percent of his pre-injury wages for 150 weeks multiplied by the percentage of disability to the hand. R.S. 23:1221(4)(o). Defendant is entitled to a credit for benefits already paid. See *896 Jacks v. Banister Pipelines America, 418 So.2d 524 (La.1982).
In his August 1987 deposition, Dr. Ferrell, when asked to give his "thoughts" on the percentage of disability to Ross's hand, stated he "roughly estimated" the percentage disability to be "approximately forty percent." He admitted that this assessment was made without measurements in conformity with the AMA Guides and was simply an impression. He also stated that his assessment was made under the erroneous impression that in April 1985 Ross won the roping contest by jumping on a calf, turning it over, and tying it up. Thus, Dr. Ferrell's assessment is of limited value in determining the extent of plaintiff's permanent disability. On February 19, 1986, Dr. Valiulis, accepted as an expert in the field of plastic and reconstructive surgery with extensive experience with hand injuries, evaluated Ross's injury and assessed a permanent disability of 58%. His assessment was made pursuant to the AMA Guides, as required by R.S. 23:1221(4)(q). Dr. Ferrell admitted that Dr. Valiulis's method of calculation was correct. The reliable medical and lay evidence preponderates to show that Ross's anatomic disability is 58% and therefore he is entitled to sixty-six and two-thirds percent of his weekly wages for 87 weeks (150 × 58%), less a credit for payments already made by defendant.
At the time of the accident R.S. 23:1221(3) providing for SEB provided in part:
Compensation shall be paid under this Chapter in accordance with the following schedule of payments: * * *
(3) Supplemental earnings benefits.
(a) For injury resulting in the employee's inability to earn wages equal to ninety per cent or more of wages at time of injury, supplemental earnings benefits equal to seventy-four percent of the difference between ninety percent of the average monthly wages at time of injury and average monthly wages earned or average monthly wages the employee is able to earn in any month thereafter in any employment or self-employment, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of the injury was particularly fitted by reason of education, training, and experience, such comparison to be made on a monthly basis. Average monthly wages shall be computed as four and three-tenths times the wages as defined in R.S. 23:1021(10).
To qualify for SEB under R.S. 23:1221(3)(a), a plaintiff is required to prove by a preponderance of the evidence that a work related injury resulted in his inability to earn wages equal to 90% or more of his wages at the time of injury. Barton v. Waussau Ins. Co., 545 So.2d 1248 (La. App.2d Cir.1989); Clark v. Atlantic Painting Co., 521 So.2d 505 (La.App.4th Cir. 1989); Gaspard v. St. Paul Fire & Marine Ins. Co., 483 So.2d 1037 (La.App.3d Cir. 1985).
At the time of the accident, Ross was earning $388 per week. He testified that following his injury he has been unable to find regular employment. He admitted trying to haul hay and pen cows on several occasions, but after exerting the strength in his hand for about 30 minutes, the weakness and pain in his hand forced him to quit working. Ross's inability to work was corroborated by the testimony of his coworkers, Charles Robertson and Aubrey Duncan, as well as by Dr. Valiulis, who testified that he did not believe anyone would hire Ross over a normal person. Dr. Valiulis also testified that Ross cannot grasp things like a normal person. Dr. Ferrell testified that Ross did not have all of the motion in his fingers and had problems with grip strength. He stated that his hand motion was so limited that his former employer would not rehire him. He also stated that he did not believe anyone in the construction business would hire him. The medical and lay testimony found credible by the trial court establishes by a preponderance of the evidence that plaintiff's injury has severely limited his ability to work and has rendered him unable to earn wages equal to 90% of his wages at *897 the time of his injury. Therefore, he is entitled to SEB.
Once the plaintiff proves that a work related injury prevents him from earning wages equal to 90% or more of the wages he earned at the time of the injury, it must be determined the amount of SEB the employee is entitled to receive. Daigle v. Sherwin-Williams Co., 545 So.2d 1005 (La. 1989); Valley v. American Ins. Co., 510 So.2d 449 (La.App.3d Cir.1987). Plaintiff is not presently employed and at the time of trial had not been regularly employed since the accident. Therefore, the amount of supplemental earnings benefits he is entitled to receive is determined according to R.S. 23:1221(3)(c)(i), which reads:
(c)(i) Notwithstanding the provisions of Subparagraph (b) of this Paragraph, for purposes of Subparagraph (a) of this Paragraph, if the employee is not engaged in any employment or self-employment, as described in Subparagraph (b) of this Paragraph, or is earning wages less than the employee is able to earn, the amount determined to be the wages the employee is able to earn in any month shall in no case be less than the sum the employee would have earned in any employment or self-employment, as described in Subparagraph (b) of this Paragraph, which he was physically able to perform, and (1) which he was offered or tendered by the employer or any other employer, or (2) which is proven available to the employee in the employee's or employer's community or reasonable geographic region.
The employer or insurer bears the burden of proving the applicability of this statutory provision. Daigle v. Sherwin-Williams, supra. In arguing that Ross has not lost any wage earning capacity as a result of the accident defendant relies primarily on Dr. Ferrell's May 1985 work release. However, the release was only on a "trial basis" and Dr. Ferrell testified Ross's hand motion was so limited that neither his former employer nor any other construction company would hire him. Defendant also offered the testimony of B.J. Andrews and his wife to prove that a job was available to Ross. B.J. Andrews testified that he had seen Ross working for others in the Mansfield area, although this was specifically denied by Ross. However, on cross-examination, Andrews admitted that he had not actually seen Ross working for his neighbors, but had heard this from others. Andrews also testified that he had hired Ross five times since the accident, although Ross contends he only worked once for him. Mrs. Andrews testified that she once saw Ross working a gate with his right hand at a Livestock Auction. This allegation was also denied by Ross. The trial court held that the fact that plaintiff can ride a horse and herd cattle is insufficient to show that he is able to work. We cannot say that this factual finding is clearly wrong. We believe that the evidence offered by the defendant, which consisted of Dr. Ferrell's work release and the testimony of the Andrews, is uncorroborated and insufficient to meet its burden of proof. Although there may be jobs that Ross can perform, the defendant failed to show that he was physically able to perform any employment offered to him or available to him in his or his employer's community or reasonable geographical region. Ross's skills, which are confined to manual labor, have been critically impaired by the injury to his dominant hand, resulting in severely curtailed employment opportunities. The record shows that with Ross's education, skill, and training and the extent of the injury to his dominant right hand, the defendant failed to prove that he was able to earn any wages. Therefore, the deduction for earning capacity under R.S. 23:1221(3)(c)(i) is not applicable to this award of SEB.
In sum, we conclude that plaintiff proved that he was entitled to receive workers compensation benefits after May 30, 1985 for SEB and also for permanent partial disability benefits. The Supreme Court in Jacks v. Banister Pipelines America, supra, explained the relationship between the general disability and the specific loss provisions of an earlier workers compensation statute:
The prevailing interpretation is that an employee may not recover compensation *898 both for a total or partial disability and for a specific loss but he may recover for one or the other, the employee being permitted recovery under whichever provisions affords him greater compensation. 418 So.2d at 527
We believe that this rule of law is also applicable to the present law. See Lang Pham v. Delta Petroleum Co., supra. Since the SEB provisions, which would afford benefits for a maximum of 520 weeks, less a credit for payment already made, would be more favorable than permanent partial, which would provide benefits for only 87 weeks (150 X 58%), less a credit for payments already made, we find that Ross is entitled to SEB. All past due benefits are to be awarded with legal interest.
Ross's pre-injury wage was $388 per week. Considering the formula of 23:1221(3) for calculating the rate of SEB, Ross's award is subject to the weekly maximum of $248, as provided by R.S. 23:1202 A. Such benefits shall not exceed the statutory maximum of 520 weeks and are subject to a credit for benefits already paid by the defendant. See Jacks v. Banister Pipelines America, supra; Gaspard v. St. Paul Fire and Marine Ins. Co., supra; Hurley v. Graver Energy Systems, Inc., 523 So.2d 873 (La.App.1st Cir.1988). Such benefits are also subject to any future credits and deductions allowable under R.S. 23:1221(3).

PENALTIES AND ATTORNEY'S FEES
The trial court refused to award plaintiff penalties and attorney fees. On appeal plaintiff contends that the trial court erred in refusing to make these awards.
An employer or its insurer shall be liable for reasonable attorney fees for terminating benefits when the action is arbitrary, capricious, or without probable cause. LSA-R.S. 23:1201.2; Lamette v. Morrison Assur. Co., 461 So.2d 351 (La. App.2d Cir.1984). Whether or not a termination of or refusal to pay benefits is arbitrary, capricious, or without probable cause depends primarily on the facts known to the employer or insurer at the time of its action. Lee v. Smith, 248 La. 16, 176 So.2d 413 (1965); Scott v. Sears, Roebuck and Co., 406 So.2d 701 (La.App.2d Cir.1981); Edwards v. Hartford Ins. Co., 445 So.2d 499 (La.App.2d Cir.1984). If any installment of compensation without an order is not paid within the time provided in R.S. 23:1201, there shall be added to such unpaid installment a penalty of an amount equal to 12% thereof, unless the nonpayment results from conditions over which the employer or his insurer had no control or unless the employee's rights to such benefits have been "reasonably controverted" by the employer or his insurer. R.S. 23:1201 E; Green v. Jackson Rapid Delivery Service, 506 So.2d 1345 (La.App.2d Cir. 1987). The claimant's right to such benefits will be deemed to have been reasonably controverted if the employer or insurer had sufficient factual and medical information to reasonably counter the factual and medical information presented by the claimant. Green v. Jackson Rapid Delivery Service, supra. The trial judge's determination as to penalties and attorney fees is ultimately one of fact and his finding should not be disturbed on appeal absent manifest error. Lamette v. Morrison Assur. Co., supra; Harrison v. Chicago Mill and Lumber Co., 446 So.2d 843 (La.App.2d Cir.1984).
In his report, Dr. Ferrell noted that plaintiff should be able to return to work on May 11, 1985. Dr. Ferrell did not assess plaintiff's permanent hand disability. Relying upon this report, on May 30, 1985, defendant terminated plaintiff's benefits. In February 1986, plaintiff was evaluated by Dr. Valiulis, who properly assessed a permanent hand disability at 58%. On August 26, 1986, plaintiff sent Dr. Valiulis's evaluation report to defendant and requested that it resume making payments under the permanent partial disability schedule. Leah Howard, the claims representative handling plaintiff's file, testified by deposition that she received Dr. Valiulis's report but took no action with regard to it.
When an insurer's termination of workers compensation is based on competent medical evidence, the insurer's action is not arbitrary and capricious so as to warrant imposition of penalties and attorney *899 fees. Crawford v. Al Smith Plumbing and Heating Service, Inc., 352 So.2d 669 (La.1977); Jackson v. Georgia and Sur. Co., 513 So.2d 530 (La.App.2d Cir. 1987). However, if subsequent to an initial optimistic medical report, an insurer receives medical information showing that the claimant is disabled, the insurer may not avoid penalties for arbitrary non-payment by blindly relying on the initial report. Walker v. Gaines P. Wilson and Son, Inc., 340 So.2d 985 (La.1976); Jackson v. Georgia and Sur. Co., supra.
In the present case, Dr. Ferrell never quantified the disability to Ross's hand until his deposition in August, 1987. In August 1986, on the basis of Dr. Valiulis's report, the defendant was made aware that plaintiff could be entitled to permanent partial disability benefits. When defendant learned of the evaluation it should have either paid benefits on the basis of the report or further investigated the extent of the injury with follow-up discussions with Dr. Valiulis or Dr. Ferrell. Under the circumstances, its refusal to do so amounted to arbitrary and capricious conduct. Furthermore, the plaintiff's claim for payment after August 1986 was not reasonably controverted by the defendant. We therefore find that the trial court manifestly erred in not awarding plaintiff penalties for nonpayment of benefits after August 26, 1986, the date plaintiff sent Dr. Valiulis's evaluation report to defendant, and for reasonable attorney fees. An award of attorney's fees of $6,500.00 is appropriate under the circumstances of this case.

DECREE
For the foregoing reasons, the judgment awarding temporary total disability benefits after May 30, 1985 and denying penalties and attorney fees is reversed. Judgment is rendered as follows:
IT IS HEREBY ORDERED, ADJUDGED AND DECREED that there be judgment in favor of the plaintiff, Fred Ross, Jr., and against the defendant, St. Paul Fire and Marine Insurance Company, for supplemental earnings benefits in the amount of Two Hundred, Forty-Eight and 00/100 ($248.00) Dollars per week, beginning May 30, 1985; together with legal interest on each past due installment from due date until paid; and subject to credit for temporary total benefits already paid and any other deductions or credits allowable under R.S. 23:1221(3).
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the defendant pay unto the plaintiff the sum of Six Thousand Five Hundred and 00/100 ($6,500.00) Dollars as reasonable attorney fees and a sum equal to 12 percent of each past due installment of weekly benefits after May 30, 1985 as penalty.
Costs of this appeal are assessed to appellant, St. Paul Fire & Marine Insurance Company.
REVERSED AND RENDERED.

ON APPLICATION FOR REHEARING
Before NORRIS, LINDSAY, HIGHTOWER, HALL and SEXTON, JJ.
Rehearing denied.