liMARVIN, Chief Judge.
In this worker’s compensation action the employer, BE & K Construction Company, appeals a judgment awarding Troy Bailes temporary total disability benefits for the period February-May 1993, the 12 percent statutory penalty and $3,000 in attorney fees. An award of rehabilitation services was also made but is not at issue on appeal. Bailes does not seek to increase the attorney fee award.
PREFACE
BE & K is an Alabama-based corporation which performs construction and maintenance work at paper mills throughout the United States. Bailes, an ironworker, was working for BE & K at the paper mill in Hodge, La., about 60 miles from Bailes’ home in Clarks, La., when he was injured in March 1992. BE & K paid Bailes w.c. benefits until February 1993, when Bailes declined BE & K’s offer of work within his doctor’s restrictions at a BE & K job site in Virginia. BE & K resumed paying benefits on May 20, 1993, after Bailes formally sought reinstatement of benefits.
BE & K contends the February-May 1993 benefits should be classified as supplemental earnings benefits (SEB) rather than TTD, but does not dispute the trial court’s finding that Bailes was owed compensation during that period.
BE & K seeks reversal of the penalty and attorney fee awards, claiming it acted reasonably, by industry standards, in terminating Bailes’ benefits when he declined BE & K’s offer of suitable out-of-state work.
RWe agree that the weekly benefits for February-May 1993 should be classified as SEB, in light of the fact that Bailes had reached maximum medical improvement in July 1992, according to his doctor. Ross v. St. Paul Fire & Marine Ins. Co., 556 So.2d 891 (La.App.2d Cir.1990). The statutory allowance of a TTD award to a worker who is undergoing vocational rehabilitation (LRS 23:1226 F) does not avail Bailes because he did not receive rehabilitation services during the period at issue. We shall amend the *169 judgment to reclassify the weekly benefits as SEB.
We affirm the judgment as amended. The penalty and attorney fee awards are based on factual findings that cannot be deemed clearly wrong on this record. Ross, supra.
FACTS
Bailes, now age 47, injured his left knee on March 18, 1992. He continued working on “light duty” at the paper mill in Hodge for about two months, while receiving medical treatment for his injury, but stopped working after having knee surgery in May 1992. According to Bailes’ orthopedist, Dr. Scott McClelland, Bailes reached maximum medical improvement on July 22, 1992, with a 15 percent permanent impairment of his left knee. Dr. McClelland restricted Bailes from heavy lifting, squatting, kneeling and climbing, all of which he was required to do as an ironworker.
BE & K’s job in Hodge was completed before Bailes was released for restricted work. BE & K’s other job sites in Louisiana had no work suitable for an ironworker such as Bailes. BE & K continued to pay Bailes weekly benefits until February 1993, when Bailes declined BE & K’s offer of work as |3an ironworker, but within Dr. McClelland’s restrictions, at a job site in Covington, Virginia.
The Virginia job would have paid $14 per hour, a little more than the $13 hourly rate Bailes earned in Hodge. Several BE & K ironworkers who had worked in Hodge went to work in Virginia after the Hodge job was completed. Bailes had expressed an interest in the Virginia job to BE & K’s medical consultant, Linda Weatherly, shortly after his injury, subject to being released by his doctor. After his May 1992 knee surgery, however, Bailes told Weatherly he had reservations about being physically able to perform the work. These reservations were among the reasons Bailes gave at trial for declining BE & K’s February 1993 offer of work in Virginia. Other reasons, according to Bailes, were that BE & K did not disclose how much longer the Virginia job was expected to continue, and did not offer to pay Bailes’ transportation expenses to allow him a “trial period” of work.
Bailes sought reinstatement of his benefits in April 1993. The matter was initially submitted to a mediator, who recommended that BE & K resume paying benefits pending a decision by the worker’s compensation hearing officer (WCHO). Acting on this recommendation, BE & K reinstated benefits on May 20, 1993. Trial before the WCHO was held on July 9, 1993.
BE & K has a “modified duty” program, through which injured workers are returned to work within their doctor’s restrictions, either at the same job site, if the work is ongoing, or at another BE & K job site. As in Bailes’ case, BE & K first tries to locate modified work within the employee’s home state or in a neighboring state. If suitable work is not found in that limited area, pBE & K seeks to find work at its more distant job sites. BE & K has nationwide operations, with a high concentration of jobs in the south and along the east coast. The modified duty program is “company-wide,” and is not limited to the particular state or region in which the injured worker lives.
According to William Lowe, the manager of BE & K’s modified duty program, interstate travel to obtain work is common in the construction industry. When Bailes applied for work with BE & K in 1991, he listed prior jobs in Louisiana, Alaska, Georgia and Alabama, for the period 1987-1990, on his employment application. Lowe assumed but did not verify that Bailes lived in Louisiana throughout this period. Lowe reviewed the work history in Bailes’ application before offering him the job in Virginia.
Bañes grew up in North Louisiana and worked in oü fields for many years before he began doing ironwork in the 1980’s. Bañes moved from Columbia, Louisiana, to Columbia, Tennessee, in 1988, after accepting a job as an ironworker in that area. From 1988-1990, Bailes worked various jobs in northern and central Alabama. He drove from his Tennessee home to the job site each day, sometimes as much as 200 miles round trip. He did not work in Georgia or in Louisiana during this period, notwithstanding the contrary representations on his application with *170 BE & K, which Bailes said he made under the mistaken assumption that he was being asked to list the home office of the companies he had worked for in Alabama. The only time Bailes did not make daily commutes to a job site was when he worked in Alaska for a few months in 1987.
IsBailes testified he was willing to try any job his doctor approved for him. He feared, however, that the ironworker’s job in Virginia, which had ostensibly been modified to fit within Dr. McClelland’s restrictions as to lifting, squatting, kneeling and climbing, would actually require him to exceed those restrictions. According to Bailes, his superiors on the job in Hodge required him to perform tasks that exceeded his doctor’s restrictions, of which they were aware, while he was on “light duty” after his knee injury but before his surgery.
Lowe had no knowledge of such conduct, saying it would violate BE & K’s policy of strictly adhering to the medical restrictions placed on its injured workers. According to Lowe, the modified duty job in Virginia that Bailes declined was later accepted by an Oklahoma worker from the Virginia area who was subject to more stringent physical restrictions than was Bailes.
WCHO’S FINDINGS
In reasons for judgment, the WCHO stated:
This court must decide whether [BE & K] was arbitrary and capricious in terminating benefits after it created a special job for claimant in the State of Virginia. [BE & K] contends that because [Bailes’] employment application listed jobs at various places around the country, they were justified in concluding that a job thousands of miles from [Bailes’] home would be sufficient to relieve [BE & K] of the duty to continue payment of weekly benefits. This position is both factually and legally unsound.
LRS 23:1221(3)(c)(i), dealing with supplemental earnings benefits, allows the employer to reduce or defeat an SEB award by showing that an employee who is not working is physically capable of performing work “(1) which he was offered or tendered by the employer or any other employer, or ¡ e(2) which is proven available to the employee in the employee’s or employer’s community or reasonable geographic region.”
Finding that the job BE & K offered Bailes in Virginia was not within a “reasonable geographic region,” and that Bailes “had always worked at job sites within driving distance of his home ... except for one short job in ... Alaska,” the WCHO awarded Bailes weekly benefits for the period February-May 1993, penalties, attorney fees and rehabilitation services. The WCHO did not adopt the construction of the statute advanced by BE & K based on the disjunctive “or” in the statute, that is, that no geographic restriction (part 2) applies to work “offered or tendered by the employer” (part 1 of the statute).
DISCUSSION
By not appealing the issue of Bailes’ entitlement to weekly benefits during the period in question, BE & K has effectively conceded its abandonment of the contention that its offer of out-of-state work to Bailes at a higher pay rate met the statutory requirements for defeating an SEB award. BE & K’s argument on appeal is simply that its termination of Bailes’ benefits was based on a good faith belief that the Virginia job offer complied with the statute, notwithstanding that the WCHO interpreted the statute differently. As evidence of the reasonableness of its conduct, BE & K cites Bailes’ job application listing jobs in other states and the testimony of BE & K’s medical consultant that Bailes expressed an interest in working at the Virginia job site after he was injured.
Whether an employer acts reasonably and in good faith on the one hand, or arbitrarily and in bad faith on the other, in terminating an injured 17Worker’s benefits, is a factual issue. We review the WCHO’s factual findings and inferences under the clearly wrong standard of review, not to assess whether they are right or wrong in an absolute sense, nor to determine whether this court or another trier of fact might reasonably reach a different conclusion from *171 the same evidence, but solely to ask whether this factfinder’s resolution of the conflicting evidence was reasonable, in light of the record as a whole. See and compare Freeman v. Poulan/Weed Eater, 93-1530 (La. 1/14/94), 630 So.2d 733, and Ross, supra.
BE & K wrongly assumed that Bailes always moved from state to state for work in the past, rather than taking jobs within a reasonable driving distance of his home, whether in Louisiana or in Tennessee. The defense witness who testified that Bailes had expressed an interest in working in Virginia shortly after he was injured admitted that Bailes questioned his physical ability to do the work required there after he had knee surgery. The WCHO characterized the job offered to Bailes, which was substantially modified from the usual tasks of an iron-worker to fit within Dr. McClelland’s restrictions, as “specially created,” obviously believing Bailes’ testimony and stated experience that the physical demands of ironwork would likely, as a practical matter, exceed those restrictions.
CONCLUSION; DECREE
On this record, the WCHO’s resolution of the conflicting evidence on the reasonableness of BE & K’s conduct does not present clear factual error. Our affirmance on the factual issue makes any discussion of how the statute should be interpreted unnecessary.
|8We affirm the penalty and attorney fee awards, hereby amending the judgment solely to reclassify Bailes’ weekly benefits for the period February-May 1993 as supplemental earnings benefits rather than temporary total disability benefits.
Costs of the appeal are assessed to BE & K.
AFFIRMED AS AMENDED.