753 So.2d 871 (1999)
Jerry BRISTER
v.
SEARS AUTHORIZED RETAIL DEALER [and LWCC].
No. 99-945.
Court of Appeal of Louisiana, Third Circuit.
December 8, 1999.
Writ Denied February 25, 2000.
*873 Thomas E. Townsley, Lake Charles, LA, Counsel for Jerry Brister.
Thomas D. Travis, Baton Rouge, LA, Counsel for Sears Authorized Retail Dealer.
Before COOKS, PETERS, and PICKETT, Judges.
PETERS, J.
In this workers' compensation case, William Dunn, who operates his business under the trade name of Sears Authorized Retail Dealer, and his workers' compensation insurer, the Louisiana Workers' Compensation Corporation (LWCC), appeal a judgment finding the employee, Jerry Brister, temporarily totally disabled and awarding Brister penalties and attorney fees because of their unilateral reclassification of Brister's indemnity benefits from temporary total benefits to supplemental earnings benefits. Brister has answered the appeal, seeking an increase of the trial attorney fee award and seeking additional attorney fees for work performed in conjunction with the appeal.

DISCUSSION OF THE RECORD
It is not disputed that William Dunn employed Jerry Brister in his Sears store as a manual laborer and salesman and that on November 17, 1995, Brister sustained a work-related injury when he lifted a large screen television. As he lifted the television, Brister felt a burning sensation in his back and later that day reported the incident to his employer.
Brister initially sought treatment with a Dr. Mong of Leesville, Louisiana. Dr. Mong's diagnosis was that of a strained back, and he prescribed muscle relaxants as treatment. Brister did not initially improve and on December 8, 1995, was examined by Dr. David Steiner, a Leesville orthopedic surgeon. After physically examining Brister and reviewing X-rays of the cervical and lumbar spines, Dr. Steiner concluded that Brister suffered from a cervical and lumbar strain. The X-rays revealed minimal arthritic changes and a small anterior osteophyte at L3.
Brister continued seeing Dr. Steiner, who prescribed physical therapy, anti-inflammatory medication, muscle relaxant medication, and mild pain medication. When conservative treatment failed, Dr. Steiner ordered diagnostic tests which revealed "some significant problems." Specifically, an MRI of the cervical spine revealed significant protrusion at the C6-7 level which compromised the nerve root. The doctor later discovered that the protrusion was actually a ruptured disc. Additionally, an EMG suggested carpal tunnel syndrome, and a myelogram of the lumbar spine revealed a protrusion at the L4-5 level which impinged on the thecal sac. Dr. Steiner also noted that Brister had some triangulation of the canal, which would contribute to not only a ruptured disc, but also to some spinal stenosis. Based on Brister's injury history, Dr. Steiner related the cervical, lumbar, and carpal tunnel problems to the accident of November 17, 1995. Because of his physical injuries, Brister ceased working on August 21, 1996, and LWCC began timely paying Brister temporary total disability benefits.
On September 12, 1996, Dr. Steiner performed an anterior cervical discectomy and fusion with bone graft on Brister at the C6-7 level. The doctor testified that, *874 following the surgery, Brister continued to have some small residual problems but that he improved significantly. Brister testified that after the surgery, he still suffered from numbness and often dropped things. Although Dr. Steiner felt that Brister might need to have surgery on his lumbar spine, Brister expressed a fear of the surgery because he did not feel as though the cervical surgery did "that much good."
As a result of the injury and surgery, Brister became depressed, which, according to Dr. Steiner, is a common side effect of Brister's type of injury. Sometime in 1997, Brister sought treatment for his depression from Dr. Paul Matthews, a Lake Charles, Louisiana psychiatrist. Dr. Matthews prescribed medication to treat Brister's depression and was still treating Brister as of the time of trial.
According to Dr. Steiner, Brister reached maximum medical improvement in October of 1997. Thereafter, he ordered a functional capacity evaluation (FCE), which was conducted on February 10, 1998. The FCE results revealed that Brister's physical demand level was sedentary but that Brister was not capable of returning to work at even that level. However, the FCE results also suggested that Brister exhibited inappropriate responses in nine of twelve tests, "indicating a significant amount of inconsistent effort occurred." The report also stated that "[a]n excessive amount of positive responses during the symptom magnification tests may indicate that unreliable data may have been produced during the maximal effort tests...." Dr. Steiner considered the positive and negative findings of the FCE, the results of the various diagnostic tests performed on Brister, and the doctor's findings from the numerous physical examinations he performed on Brister and concluded that Brister could not function in even a sedentary capacity. The doctor did not feel Brister's situation would improve unless he consented to the lumbar surgery but did state that there was a "possibility" that at some time in the future Brister would be able to do some work with or without the surgery.
Brister testified at trial that his injuries still caused severe pain throughout his body. According to Brister, he still had severe neck pain, frequent numbness in his hands, lower back and arm pain, and numbness and pain in his legs. These various conditions prevented him from holding on to anything, caused his legs to give out, and required that he use a cane while walking.
Litigation in this case began when Brister filed a claim for mileage reimbursement for vocational rehabilitation consults which the defendants refused to pay despite demand for payment. His claim included a request for penalties and attorney fees. In July of 1998, while the mileage reimbursement claim was pending, the defendants converted Brister's temporary total disability benefits to supplemental earnings benefits. This conversion did not result in any decrease in weekly benefits to Brister because LWCC paid the supplemental earnings benefits at the same rate as the temporary total disability rate. Brister then filed an amended claim, asserting that he was permanently and totally disabled as a result of the accident and that the defendants acted arbitrarily and capriciously in changing the benefits from temporary total to supplemental earnings benefits.
After a hearing, the workers' compensation judge awarded Brister the requested mileage expenses but rejected Brister's demand that he be declared permanently and totally disabled. However, the workers' compensation judge did find that Brister "continue[d] to be temporary [sic] totally disabled until further orders of this court." Finding that the defendants improperly converted Brister's benefits to supplemental earnings benefits, the workers' compensation judge awarded Brister penalties of $2,000.00 and attorney fees of $2,000.00. The defendants appeal only the finding of temporary total disability status *875 and the award of penalties and attorney fees. Brister's answer to the appeal addresses the sufficiency of the trial attorney fee award and requests an attorney fee award for work performed on appeal.

OPINION
The defendants challenge the workers' compensation judge's findings concerning both the extent and duration of Brister's disability. They assert that Dr. Steiner testified that Brister could perform some type of work but for his lack of motivation and his degree of pain.
Concerning the extent of disability, La. R.S. 23:1221(1)(c) provides in part:
(c) ... [C]ompensation for temporary total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment, including but not limited to any and all odd-lot employment, sheltered employment, or employment while working in any pain, notwithstanding the location or availability of any such employment or self-employment.
We note that Dr. Steiner did testify that he did not see Brister as being highly motivated, but the doctor was of the opinion that Brister had some significant orthopedic problems and that while his depression affected his ability to function,[1] even without the psychological factors he would have a difficult time with any type of employment. When questioned concerning whether Brister was capable of performing any type of work, even sedentary work, Dr. Steiner replied as follows:
Well, basically, in my innermost sanctum, I think almost anybody can do sedentary work. But his situation, I think he's not going to function. And he certainlyif he can't lift something ... up off the floor as light as 10 pounds, he's not going to function in the sedentary kind of capacity. If he had a sedentary job that didn't require anything at all, he would have a very difficult time spending eight hours a day either sitting or standing or moving about. He would probably not function in that capacity.
Dr. Steiner went on to further explain his opinion:
[S]edentary activities, that's just basic life. He has to do sedentary things just to live, whether they hurt or don't hurt. And so basically, like I said, in my innermost sanctum, I think most anybody can do sedentary activities. But when you put someone in a workplace where they are required to do something, lose some of their control over their activities, then theythat's another parameter of trying to do something for remuneration, even on a sedentary level. And I don't think he would function at that level even if he didn't have to lift 10 pounds.
I think he's got some additional problems besides his physical difficulties with his neck and back. I think he's got some serious psychological factors involved, and all these things modify that to some extent.
Could he sit for eight hours or stand for eight hours, or mix them up for eight hours, in a controlled situation to perform a laboring activity? I doubt he would be able to manage it.
. . . .
... You would think telephone operator, well, that's a sedentary job, but ... that would drive him up the wall. He would never make that. You know, even though he doesn't have to lift anything, he would never be able to tolerate that with his back situation. Because he *876 can't stay in any one position for any significant length of time. And that superimposed upon his psychological status, he couldn't function.
. . . .
... He does have some significant problems. But combined with his psychological status, I don't think he can manage to do many things for any length of time that you would be able to depend on in the work force.
. . . .
... [Y]ou take his physical disabilities and limitations, with his depression, realizing he doesn't have a psychiatric problem per se, I don't think you're going to get him to do even a sedentary job. If you specifically tailor one to his situation, you may be able to get something done. But I think in that situation... it would be in his home where he had unlimited control of his activities. And how productive that would be, I think it would be extremely difficult to say.
Paperwise, you could just say, "Yes, we've accomplished this, he might be able to do that."
Reality? I doubt it.
In addition to his complaints of numbness and weakness in his hands and legs, Brister also asserted that he is unable to sit for more than thirty minutes at a time before having to stand up, move around, or lie down. Dr. Steiner agreed that Brister's condition required that he lie down or get off of his feet for some period of time and that therefore even sitting with sedentary work would not be wise for him to try. The doctor testified: "It's known that sitting is probably not the best position for people with a ruptured disk in the lumbar spine.... [I]t creates more pressure on the disk space sitting than standing or walking or lying down." Brister also testified that he takes medication to help him sleep at night and that he does not get any rest unless he takes medication. According to Brister, he spends most of the day in a recliner or lying down and takes a nap at least once a day. Dr. Steiner also indicated that Brister's sleeping patterns would tend to cause him problems functioning at a sedentary level.
Disability can be proven by both medical and lay testimony, and the trier of fact must weigh all of the evidence in order to determine if the employee has met his burden of proof. Bailey v. Smelser Oil & Gas, Inc., 620 So.2d 277 (La. 1993). This factual determination should not be overturned absent manifest error. Id. The defendants suggest that the manifest error rule does not apply in this case because the workers' compensation judge confused the determination of disability status with the proper rate of supplemental earnings benefits based on wage earning capacity. As such, the defendants suggest that a de novo review is required.
Specifically, the defendants contend that the workers' compensation judge emphasized the fact that vocational rehabilitation had just begun and that no job had been identified when the conversion of benefits occurred. While the workers' compensation judge did make comments to that effect, she did so in the context of the defendants' culpability for converting the temporary total disability benefits to supplemental earnings benefits for the purposes of justifying the award of penalties and attorney fees. Basically, the workers' compensation judge's point was that the defendants did not have sufficient information to convert the benefits, citing the insufficient vocational rehabilitation as a reason for her finding of prematurity. A reading of the reasons for judgment reveals that the judge did in fact apply the correct test for determining the extent of Brister's disability, having noted that "Doctor Steiner feels that the Plaintiff is unable to work at this time." Thus, we do not find that a de novo review is required, and we find no manifest error in the workers' compensation judge's finding that Brister is physically unable to engage in *877 any employment for purposes of temporary total disability status.
Concerning the duration of disability benefits, La.R.S. 23:1221(1)(d) provided at the time of the injury:
(d) An award of benefits based on temporary total disability shall cease when the physical condition of the employee has resolved itself to the point that a reasonably reliable determination of the extent of disability of the employee may be made, and the employee's physical condition has improved to the point that continued, regular treatment by a physician is not required, or six months after the injury, whichever first occurs. If the claimant contends that his disability is of a temporary nature, but extends beyond this six-month period, he must submit a claim for extension of the period of temporary total disability under R.S. 23:1310.3.
(We note that La.R.S. 23:1221(1)(d) was amended by Acts 1999, No. 702, § 1, effective August 15, 1999, to delete the following language: "or six months after the injury, whichever first occurs. If the claimant contends that his disability is of a temporary nature, but extends beyond this six-month period, he must submit a claim for extension of the period of temporary total disability under R.S. 23:1310.3.")
The defendants contend that the workers' compensation judge was clearly wrong in determining that Brister was temporarily totally disabled since he had reached maximum medical improvement and was not adjudicated to be permanently and totally disabled. The defendants cite Mason v. Auto Convoy, 27,444 (La.App. 2 Cir. 11/1/95); 662 So.2d 843, writ denied, 95-2905 (La.2/2/96); 666 So.2d 1103; Bradley v. Justiss Oil Co., 618 So.2d 646 (La.App. 2 Cir.1993); and Holmes v. International Properties, 611 So.2d 773 (La.App. 4 Cir. 1992), for the proposition that when a claimant has reached maximum medical improvement and has been released to return to work, temporary total disability benefits are no longer due. Citing Ross v. St. Paul Fire & Marine Insurance Co., 556 So.2d 891 (La.App. 2 Cir.1990), the defendants also urge that Brister was no longer in a healing and recovery period and therefore his disability could not be considered temporary. They argue that because the workers' compensation judge did not adjudicate Brister permanently and totally disabled and his disability cannot be considered temporary, the only remaining category of benefits is supplemental earnings benefits under the evidence in the record.
Importantly, in Mason, the court explained that the reason temporary total disability benefits are no longer due in a case in which the claimant reaches maximum medical improvement and is released to return to work is because when the employee is released to return to work he is deemed to be able to engage in some occupation for wages as contemplated by La.R.S. 23:1221(1). In Mason, the claimant had not only reached maximum medical improvement but had also been released to return to work. Additionally, in Bradley and Holmes, the claimant had not only reached maximum medical improvement but had also been approved for sedentary duties. We agree that once a claimant reaches maximum medical improvement and has been released to return to work, temporary total disability benefits are no longer due. However, in the instant case, Brister has not been released to return to work.
In Ross, 556 So.2d at 895, the court stated that "when a satisfactory degree of healing is reached, the claimant's condition will be deemed `permanent' and he will no longer be entitled to temporary total disability benefits." The defendants would have Brister defaulted into the supplemental earnings benefits category because the workers' compensation judge did not find him to be permanently totally disabled and because he is no longer in a healing and recovery period, despite the fact that Dr. Steiner was of the opinion that Brister *878 would not be able to function at even a sedentary level. We note that the facts of Ross occurred prior to the effective date of Acts 1988, No. 938, § 1, which added the language found in current La.R.S. 23:1221(1)(d) that provides for cessation of benefits "when the physical condition of the employee has resolved itself to the point that a reasonably reliable determination of the extent of disability of the employee may be made, and the employee's physical condition has improved to the point that continued, regular treatment by a physician is not required." Additionally, the claimant in Ross was approved for work activities.
The workers' compensation judge found that Brister was not entitled to permanent total disability benefits because there were "many if's" throughout Dr. Steiner's deposition, because Brister's depression affected his ability to perhaps put forth maximal effort in the FCE, and because of Brister's decision not to have surgery at this time. Such a determination does not necessarily require that Brister be defaulted to supplemental earnings benefits on the basis that he has reached maximum medical improvement, especially in light of the finding that Brister cannot work.[2]
While Dr. Steiner stated that Brister had reached maximum medical improvement in October of 1997, he was still of the opinion that Brister would need periodic orthopedic evaluations and possibly medication and therapy throughout the years. In fact, he was of the opinion that Brister's situation would not change unless he had additional surgery. Thus, Brister's physical condition has not improved to the point that "continued, regular treatment by a physician is not required." In light of the foregoing, we find no manifest error in the workers' compensation judge's determination that Brister's disability is temporary and total.
The defendants also contend that the workers' compensation judge erred in awarding penalties and attorney fees, asserting that there is no statutory authority for such an award for reclassifying benefits from temporary total disability benefits to supplemental earnings benefits, especially in the absence of financial prejudice to the claimant. They further assert that the actions of the claims adjuster were not arbitrary, capricious, or without probable cause.
In 1 H. Alston Johnson, III, Workers' Compensation Law and Practice § 276, in 13 Louisiana Civil Law Treatise (3d ed. 1994-Pocket part 1998), the author states:
Somehow the idea took hold that an employer could simply "shift" a worker from TTD to SEB to start the 520-week clock running on SEB, regardless of whether there was [a] medical opinion indicating TTD was at an end or whether there was job information indicating that there was employment that the worker could perform. Eager to begin to reduce the 520-week potential period for SEB, some employers simply "shifted" a worker from TTD to SEB, particularly in those instances where the amount of the check did not change. In some cases, there was not even a notification to the employee that this had occurred.
The author on numerous occasions had indicated that this practice was without legislative foundation, and that employers and carriers were taking a chance in doing so. If nothing else, it might eventually be held that all of these SEB payments after a shift without justification continued to be TTD payments, and thus no part of the 520-week obligation had been discharged. Now there is support in the cases for the *879 proposition that this "shift" cannot occur without justification, and for the warning that the "shift" might simply be ignored by the courts to the peril of the employer.
(Footnote omitted.)
The author cites several cases in support, including Rao v. R & W Equipment Co., 94-1477 (La.App. 3 Cir. 7/12/95); 661 So.2d 1003 (holding that there was no manifest error in the award of penalties and attorney fees where temporary total disability benefits were reduced to supplemental earnings benefits based on a job offered to the claimant that was not offered in the spirit of rehabilitation), writ denied, 95-2939 (La.2/9/96); 667 So.2d 532; Joiner v. Newberg Venture, 94-1533 (La. App. 3 Cir. 5/3/95); 657 So.2d 206 (holding that there was no error in the award of penalties and attorney fees where temporary total disability benefits were reclassified as supplemental earnings benefits, albeit without reduction in the amount of benefits, based on an inadequate investigation); and White v. Louisiana State Penitentiary, 93-770 (La.App. 3 Cir. 3/2/94); 634 So.2d 1271 (holding that there was no error in the award of penalties and attorney fees where temporary total disability benefits were reclassified as supplemental earnings benefits, albeit without reduction in the amount of benefits, where there was no reasonable basis given for the reclassification). Thus, we reject the defendants' assertion that penalties and attorney fees are not owed where there is merely a reclassification of benefits without a reduction in the amount of the benefits. Rather, the issue is whether there was sufficient justification for the reclassification of the benefits.
However, before reviewing the issue of justification, we find that the award of penalties should be reversed, but for a different reason. Specifically, this case involves a discontinuance of temporary total disability benefits rather than a failure to timely pay them. In Williams v. Rush Masonry, Inc., 98-2271 (La.6/29/99); 737 So.2d 41, the supreme court explained that La.R.S. 23:1201.2, as amended by Acts 1995, No. 1137, § 1, effective August 15, 1995, rather than La.R.S. 23:1201, now governs the discontinuance of payment of claims due and arising under the Workers' Compensation Act. La.R.S. 23:1201.2, as amended, provides in relevant part:
Any employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the payment of all reasonable attorney fees for the prosecution and collection of such claims.... The provisions of R.S. 22:658(C) shall be applicable to claims arising under this Chapter.
In other words, as explained by the supreme court in Williams, only attorney fees, and not penalties, are now recoverable under La.R.S. 23:1201.2 if the employer or insurer arbitrarily discontinues payment of benefits due, except that penalties may be assessed against only the insurer under La.R.S. 22:658(C), which is not applicable under the facts of this case. Because this case involves the discontinuance of the payment of temporary total disability benefits, penalties are not available to Brister for the defendants' actions in that regard.
Rather, the inquiry is whether the defendants acted arbitrarily, capriciously, or without probable cause in discontinuing the payment of benefits so as to warrant the imposition of attorney fees. "Arbitrary and capricious behavior consists of willful and unreasoning action, without consideration and regard for facts and circumstances presented, or of seemingly unfounded motivation." Brown v. Texas-LA Cartage, Inc., 98-1063, p. 8-9 (La.12/1/98); 721 So.2d 885, 890. "The employer must adequately investigate the claim, and the crucial inquiry is whether the employer had an articulable and objective reason for denying or discontinuing *880 benefits at the time it took that action." Williams, 737 So.2d at 46.
LWCC's claims adjuster, Julie Justice, testified that benefits were reclassified based on Dr. Steiner's report of October 28, 1997, in which he placed Brister at maximum medical improvement and stated he could do sedentary work. However, Ms. Justice indicated that she did not follow up with Dr. Steiner following the FCE, which provided in part that Brister was not capable of returning to work at even a sedentary level, to determine if the doctor would render another opinion in light of the FCE. While the defendants may have had a basis for initially reclassifying the benefits, the FCE should have triggered further investigation. This failure to adequately investigate the claim was willful, unreasoning, and without consideration and regard for the facts presented. Therefore, we find no manifest error in the workers' compensation judge's decision to award attorney fees.
Even so, the defendants appear to assert that attorney fees should not be awarded because benefits were reclassified more than six months after the injury such that it was Brister's responsibility to seek an extension by filing a disputed claim. Without commenting on the retroactivity of the recent amendment to La.R.S. 23:1221(1)(d), we note that it deleted the requirement that benefits shall cease six months after the injury and the requirement that the employee submit a claim for extension. In any event, Brister filed a claim in August of 1998 after the benefits were reclassified in July of 1998. Ms. Justice did not give the six-month limit as a reason for the reclassification, and we are of the opinion that La.R.S. 23:1221(1)(d) was not designed to allow defendants to use its provisions as a safe harbor for avoiding attorney fees when the reclassification is later found to be arbitrary and capricious. Thus, we reject this argument.
Brister has answered the appeal, seeking additional attorney fees for work done at the trial level and on appeal. The workers' compensation judge awarded Brister $2,000.00 in attorney fees, and we find no abuse of discretion in the amount of that award. We award additional attorney fees of $3,000.00 against LWCC for work done on appeal.

DISPOSITION
For the foregoing reasons, we reverse the award of penalties but affirm the judgment in all other respects. We award attorney fees of $3,000.00 against Louisiana Workers' Compensation Corporation for work done on appeal. Additionally, we assess costs of this appeal to William Dunn and Louisiana Workers' Compensation Corporation.
REVERSED IN PART; AFFIRMED IN PART; AND RENDERED.
NOTES
[1] We note that in Dr. Steiner's deposition, the defendants' attorney alluded to a copy of a letter from Dr. Matthews to the effect that there was no reason from a psychiatric stand point that Brister could not return to work approved by his primary medical doctor. However, we have not found that the letter was entered into evidence.
[2] We note that in Mitchell v. AT & T, 27,290 (La.App. 2 Cir. 8/28/95); 660 So.2d 204, writ denied, 95-2474 (La.12/15/95); 664 So.2d 456, and Graham v. Georgia-Pacific Corp., 26-165 (La.App. 2 Cir. 9/23/94); 643 So.2d 352, the second circuit stated that maximum medical improvement is no longer the standard for the termination of temporary total disability benefits. Additionally, Graham specifically questioned Ross.