847 So.2d 723 (2003)
Ricky BELAIRE
v.
DON SHETLER OLDS BUICK CHEVROLET.
No. 02-1152.
Court of Appeal of Louisiana, Third Circuit.
June 4, 2003.
*726 Michael B. Miller, Crowley, LA, for Plaintiff-Appellee/Appellant, Ricky Belaire.
Christopher R. Philipp, Lafayette, LA, for Defendant-Appellant/Appellee, Don Shetler Olds Buick Chevrolet.
Court composed of JOHN D. SAUNDERS, OSWALD A. DECUIR, JIMMIE C. PETERS, GLENN B. GREMILLION, and BILLY H. EZELL, Judges.
GLENN B. GREMILLION, Judge.
Both the plaintiff, Ricky Belaire, and the defendant, Don Shetler Oldsmobile Buick Chevrolet, appeal a judgment of the workers' compensation judge denying temporary total disability benefits to Belaire, and assessing penalties and attorney fees for the late and inaccurate payment of benefits against Don Shetler. For the following reasons, we reverse in part and affirm as amended.

FACTS
Belaire began working for Don Shetler on September 15, 1997. In early July 1999, Belaire suffered a work-related injury while installing an oil filter on a vehicle. He was paid full salary from his last day of work, July 19, 1999, until July 30, 1999. Don Shetler also paid TTD during that period and until March 31, 2000. On March 17, 2000, Belaire began receiving supplemental earnings benefits; he also received a $150.00 Christmas bonus in December 1999.
After his accident, Belaire complained of neck, shoulder, and left arm pain. He was initially sent to Dr. Karrie Kilgore, a family physician, by Don Shetler. Dr. Kilgore suspected possible carpal tunnel syndrome and referred Belaire to Dr. Roland Miller, an orthopaedic surgeon. Dr. Miller saw Belaire on July 30, 1999, and ordered a cervical MRI. He again saw Belaire on August 4, 1999, and ordered an EMG be conducted by Dr. James Domingue, a neurologist. Dr. Miller saw Belaire in September and October 1999, at which time he concluded that Belaire was possibly suffering from an ulnar nerve injury. He released Belaire to light duty work and referred him to Dr. Stephen Goldware, a neurosurgeon.
Dr. Goldware saw Belaire on November 23, 1999, and ordered an MRI of the cervical and thoracic spines. On March 21, 2000, Dr. Goldware opined that Belaire did not require surgery or further work-up of his complaints and that he could return to work without restrictions. Belaire did not return for his next scheduled visit on November 16, 2000. Pursuant to an interlocutory order of the workers' compensation judge, Belaire was allowed to change his treating neurosurgeon from Dr. Goldware to Dr. Luiz de Araujo.
Dr. de Araujo saw Belaire on August 6, 2001, and referred him to Dr. John Cobb, an orthopaedic surgeon. Don Shetler declined to guarantee payment claiming that Dr. Miller was Belaire's choice of orthopaedic surgeon.
After trial on the merits, the workers' compensation judge ruled that Don Shetler's calculation of average weekly wage (AWW) correctly excluded retirement benefits, bonuses, and vacation time; Belaire failed to prove the elements necessary for TTD benefits; Don Shetler is liable for penalties and attorney fees for late and inaccurate payments; and it must guarantee payment for Belaire to see Dr. Cobb. Both parties appeal.

CALCULATION OF AVERAGE WEEKLY WAGE
Belaire contends that the workers' compensation judge erred in failing to include *727 fringe benefits in the calculation of his average weekly wage. This is a question of law, thus, we simply review the workers' compensation judge's finding to determine if it is legally correct. Scobee v. Brame, 98-564 (La.App. 3 Cir. 10/28/98), 721 So.2d 977, writ denied, 98-2952 (La.1/29/99), 736 So.2d 833.
At the outset, we note that Belaire's injury occurred just prior to the effective date of the 1999 amendment to La.R.S. 23:1021(10). Accordingly, the prior law regarding fringe benefits is applicable to this case. See McClain v. Pinecrest Dev. Ctr., 00-1622 (La.App. 3 Cir. 2/28/01), 779 So.2d 1112.
Belaire argues that the workers' compensation judge erred in failing to include his Christmas bonus, vacation time, and retirement benefits in the calculation of his AWW. With regard to his Christmas bonus and vacation time, Belaire directs our attention to Daigle v. Sherwin-Williams Co., 545 So.2d 1005 (La.1989), and Harris v. Langston Co., Inc., 94-1266 (La.App. 3 Cir. 4/5/95), 653 So.2d 789, writ denied, 95-1178 (La.6/23/95), 656 So.2d 1020.
In our recent case, Johnson v. Louisiana Container Co., 02-382, p. 12 (La.App. 3 Cir. 10/2/02), 834 So.2d 1052, 1065, we stated the general rule with regard to fringe benefits, "The value of fringe benefits, if proven, will be included in the calculation of weekly wages for the purpose of determining the compensation rate if such benefits were fairly contemplated by the parties to the contract of employment." In this instance, the parties stipulated that Belaire received one week of vacation and a Christmas bonus each year. Thus, it was contemplated by Belaire and Don Shetler that he would receive these as part of his contract of employment. Accordingly, both items should be figured into the computation of his AWW. This is true even though Belaire was paid his 1999 Christmas bonus. If Don Shetler figured his week of vacation into the computation, then it was included. However, if it did not, then Belaire's AWW should be recomputed to include his week of vacation.
With regard to his retirement benefits, the workers' compensation judge excluded them from Belaire's wage computation finding that they should be excluded because he was not yet vested in Don Shetler's retirement system. Retirement benefits are considered to be fringe benefits and are included in the AWW computation. Burns v. St. Frances Cabrini Hosp., 02-518 (La.App. 3 Cir. 10/30/02), 830 So.2d 572. Based on the judicial tenet that workers' compensation law is remedial in nature and should be construed liberally in favor of finding coverage for the injured worker, we find that the workers' compensation judge erred in failing to include Belaire's retirement benefits in the computation of his AWW. Even though Belaire had not yet vested in Don Shetler's retirement system, the parties contemplated that he would receive these benefits as part of his employment contract. Thus, they should be included in determining his AWW. Accordingly, the judgment of the workers' compensation judge is reversed and it is ordered that Belaire's AWW be recomputed to include his week of vacation, his Christmas bonus, and his retirement benefits.

FORFEITURE OF BENEFITS
Don Shetler next contends that the workers' compensation judge erred in failing to forfeit Belaire's benefits under the provisions of La.R.S. 23:1208. Specifically, it contends that Belaire's benefits should be forfeited because he failed to disclose previous injuries to his treating physicians.
*728 In Resweber v. Haroil Construction Co., 94-2708, 94-3138 (La.9/5/95), 660 So.2d 7, the supreme court noted that in order to forfeit benefits, La.R.S. 23:1208 requires that 1) there is a false statement, 2) it is willfully made, and 3) it is made for the purpose of obtaining or defeating any benefit or payment. An appellate court reviews factual determinations of the workers' compensation judge under the manifest error or clearly wrong standard. Alexander v. Pellerin Marble & Granite, 93-1698 (La.1/14/94), 630 So.2d 706.
After careful review of the record, we find no manifest error in the workers' compensation judge's determination that Belaire has not forfeited his benefits. While false statements are evident in the medical history reports in the record, the workers' compensation judge could clearly have found them to be inadvertent and not for the purpose of obtaining benefits. Accordingly, this assignment has no merit.

CHOICE OF PHYSICIANS
In this assignment of error, Don Shetler contends that the workers' compensation judge erred in allowing Belaire to change from Dr. Goldware to Dr. de Araujo and from Dr. Miller to Dr. Cobb. It argues that Drs. Goldware and Miller were Belaire's de facto choice of physicians.
The workers' compensation judge's determination concerning whether a particular physician is the claimant's de facto choice of physician is factual in nature and will not be disturbed on appeal absent manifest error. Comeaux v. Sam Broussard Trucking, 94-1631 (La.App. 3 Cir. 5/31/95), 657 So.2d 449. In this case, the workers' compensation judge ordered Don Shetler to allow Belaire to go to Dr. Cobb. Implicit in that order is the determination that Drs. Goldware and Miller were not Belaire's de facto physicians. We find no manifest error in that determination, especially in light of the recent supreme court case of Smith v. Southern Holding, Inc., 02-1071 (La.1/28/03), 839 So.2d 5. Smith overruled the line of cases holding that an employee makes a de facto choice of a physician when he submits to treatment from an employer-referred physician. Accordingly, the judgment of the workers' compensation judge is affirmed, and this assignment has no merit.

EXCLUSION OF EVIDENCE
Don Shetler alleges the workers' compensation judge erred in excluding the deposition of Dr. Ricardo Leoni, a neurological surgeon, and the testimony of Ted Deshotels, a vocational rehabilitation counselor, due to a violation of La.R.S. 23:1127. We disagree.
Louisiana Revised Statute 23:1127(C) provides in pertinent part:
(1) Consistent with the policy of reasonable access to medical information for all parties and notwithstanding the provisions of Article 510 of the Louisiana Code of Evidence or any other law to the contrary, a health care provider, without the necessity of a subpoena or other discovery device, shall verbally discuss medical information regarding the injured employee with another health care provider examining the employee, a case manager, or a vocational rehabilitation counselor assigned to provide rehabilitation for that insured worker. No health care provider or his employee or agent shall be held civilly or criminally liable for disclosure of the medical information conveyed pursuant to this Section. This Paragraph shall not apply to examinations conducted by medical examiners appointed by the director pursuant to R.S. 23:1123.
(2) In any verbal communication or personal conference between the vocational *729 rehabilitation counselor and any health care provider, for the purpose of providing rehabilitation services, the employee or his agent or representative shall cooperate in scheduling a reasonable date and time for such communication or conference and the employee or his agent or representative shall be given fifteen days notice of any such communication or conference, and shall be given the opportunity to attend or participate in the communication or conference.

(3) In addition to any other duty or responsibility provided by law, a case manager or vocational rehabilitation counselor who is a party to a verbal communication with the health care provider regarding an employee, as authorized by Paragraph (1) of this Subsection, shall, within five working days of the communication, mail a written summary of the communication and any work restrictions or modifications required for the employee's reasonable return to employment to the employee, his representative, and the health care provider. The summary shall be mailed by certified mail, return receipt requested, to the employee or his representative. It shall include a narration of any diagnosis or opinion given or discussed, any conclusions reached concerning the vocational rehabilitation plan, any return to work opportunities discussed consistent with the vocational rehabilitation plan, and the medical evaluation of the health care provider.

(4) Any medical information released in writing shall be furnished to the employee at no cost to him simultaneously with it being furnished to the employer, its insurer, agent, or representative. Any such records or information furnished to the employer or insurer or any other party pursuant to this Section shall be held confidential by them and the employer or insurer or any other party shall be liable to the employee for any actual damages sustained by him as a result of a breach of this confidence up to a maximum of one thousand dollars, plus all reasonable attorney fees necessary to recover such damages. An exception to this breach of confidentiality shall be any introduction or use of such information in a court of law, or before the Office of Workers' Compensation Administration or the Louisiana Workers' Compensation Second Injury Board.
(Emphasis added).
The record reveals that Dr. Leoni met with Ted Deshotels to discuss Belaire. Belaire was neither given proper notice of the meeting nor a written summary of the meeting as required by the statute. The workers' compensation judge found that Don Shetler had violated La.R.S. 23:1127 and, therefore, excluded the deposition and testimony of the offending parties. Don Shetler argues that this was an abuse of discretion.
The workers' compensation judge has great discretion in the introduction of evidence and her decision whether to allow or disallow such evidence will not be reversed on appeal in the absence of an abuse of that discretion. Faul v. Bonin, 95-1236 (La.App. 3 Cir. 8/7/96), 678 So.2d 627, writ denied, 96-2221 (La.11/15/96), 682 So.2d 769. We find no error in the workers' compensation judge's decision to disallow the introduction of the evidence since the proper procedure in the interview of a doctor by a vocational rehabilitation specialist was not followed. Accordingly, this assignment of error is dismissed as being without merit.

SUPPLEMENTAL EARNING BENEFITS
In his first assignment of error, Belaire contends that the workers' compensation *730 judge erred in denying him SEBs. We disagree.
In order to recover SEBs, an employee must first prove by a preponderance of the evidence that, as a result of a work injury, he is unable to earn wages equal to ninety percent or more of the wages earned before the accident. La.R.S. 23:1221(3)(a); Daigle, 545 So.2d 1005. In order to set aside the ruling of a workers' compensation judge, an appellate court must conclude from the record that a reasonable factual basis did not exist for the findings and that said findings were clearly wrong. Comeaux, 657 So.2d 449. Assessments of credibility of witnesses or the weight of medical evidence should not be disturbed on appeal unless clearly wrong. Huntsberry v. Martin Mills, Inc., 97-641 (La. App. 3 Cir. 12/10/97), 704 So.2d 356, writ denied, 98-0099 (La.3/13/98), 713 So.2d 472.
In the present case, there was ample medical evidence that Belaire could return to at least light-duty work. In addition, Dr. Goldware cleared Belaire for normal activities. Belaire argues that, in spite of this evidence, the workers' compensation judge erred in ruling against him on the issue of disability where the report of Dr. Cobb was not available due to Don Shetler's refusal to authorize payment. Belaire cites no authority for this position. We find that there is ample medical evidence in the record, from physicians who have seen Belaire on numerous occasions, for the workers' compensation judge to make a decision. The report from one visit to Dr. Cobb would not be sufficient to create manifest error in the workers' compensation judge's ruling. Accordingly, we find no error in the workers' compensation judge's ruling.

PENALTIES
Both parties allege error by the workers' compensation judge with regard to the award of penalties. Belaire contends that it was error to award only $1,500.00 in penalties for the late payment of his first week's benefit. In addition, he contends that penalties should have been awarded for Don Shetler's refusal to allow him to see his choice of physicians. Don Shetler contends it overpaid benefits and should not owe any penalties. In the alternative, it argues that it should only owe $2,000.00 for late and incorrect payment under La. R.S. 23:1201(F).
The workers' compensation judge assessed Don Shetler a $1,500 penalty for the failure to timely pay the first installment of indemnity benefits. Don Shetler noticed the mistake on its own, not at the urging of Belaire or his counsel, and immediately paid the delinquency. It is evident that Don Shetler failed to make the payment as a result of its own carelessness. Therefore, given the mandatory nature of the penalty provision provided by La.R.S. 23:1201(F), we affirm the assessment of penalty for this mistake. However, we must amend the assessment and award $2,000 in penalties because the payment was due in September and not paid until April, thus requiring the maximum penalty under the statute.
The workers' compensation judge also assessed Don Shetler an additional $2,000 penalty for failing to properly calculate the amount of indemnity benefits owed to Belaire. We affirm. In Daugherty v. Domino's Pizza, 95-1394, p. 14 (La.5/21/96), 674 So.2d 947, 956, the supreme court stated:
Where the fact of late payment is uncontradicted and an employer fails to show that the late payment resulted from conditions over which the employer had no control or that the employee's right to have the bill paid by the employer is *731 controverted, La.R.S. 23:1201 and 1201.2 mandate an award of penalties and attorney's fees. See, e.g., LaHaye v. Westmoreland Casualty Co., 509 So.2d 748 (La.App. 3rd Cir.1987).
Moreover, "an employer cannot urge its own poor clerical work to escape penalties and attorney fees for nonpayment." Fisher v. Lincoln Timber Co., 31,430, p. 15 (La.App. 2 Cir. 1/24/99), 730 So.2d 973, 982. Accordingly, we find no error in the workers' compensation judge's award of penalties in this instance, even though Don Shetler corrected the mistake at the same time it corrected the late payment, Belaire was unaware of either problem, and there was not an independent "disputed claim" for the miscalculation giving rise to the assessment of an additional penalty. The judgment of the workers' compensation judge is affirmed in this instance.
With regard to the workers' compensation judge's decision not to award penalties for the failure to authorize treatment by Belaire's choice of physicians, we find no error. The determination of whether an employer should be cast with penalties and attorney's fees is a question of fact and the workers' compensation judge's findings shall not be disturbed on appeal absent manifest error. Woolley v. CAS Refining, Inc., 94-648 (La. App. 3 Cir. 1/11/95), 651 So.2d 860, writ denied, 95-1158 (La.6/16/95), 655 So.2d 331. A claimant is not entitled to an award of penalties when a claim has been reasonably controverted. La.R.S. 23:1201(F). In this case, Don Shetler believed that Belaire had made de facto choices of physicians and, therefore, was not entitled to a change. The trial court evidently found this belief to be a reasonable contravention of Belaire's request to see other physicians. After reviewing the record, we find no manifest error in the workers' compensation judge's decision not to award penalties in this instance.

ATTORNEY FEES
Belaire contends the attorney fees awarded by the workers' compensation judge are too low and attorney fees should have been awarded for the arbitrary and capricious termination of benefits. As noted above, the workers' compensation judge's decision to award attorney fees will not be disturbed unless manifestly erroneous. We find no error in the workers' compensation judge's award of attorney fees. However, we amend the judgment to an increase in attorney's fees, $2,500 in attorney fees for the late payment of the first week's benefits and $2,500 in attorney fees for the late payment of the proper amount of benefits.

CREDIT FOR OVERPAYMENT
Don Shetler contends the workers' compensation judge erred in failing to give it credit for overpayment of benefits during the period of March 17-21, 2000, when it paid both TTD and SEBs and for SEBs payments made after the date of Dr. Goldware's release of Belaire. We disagree.
Our review of the record reveals that the only evidence presented by Don Shetler in support of its claim for credit was the testimony of an employee and a printout listing checks issued. There is no evidence in the record that the checks were actually cut or received and cashed by Belaire. Absent such evidence, the workers' compensation judge did not err in failing to find Don Shetler was owed a credit.

WORK PERFORMED ON APPEAL
On appeal, Belaire asks for additional attorney's fees for work performed on appeal. Considering our findings, we *732 award him an additional $5,000 for work performed on appeal.

CONCLUSION
For the foregoing reasons, the judgment of the workers' compensation judge is reversed insofar as it excluded Belaire's fringe benefits from the computation of his average weekly wage. The judgment is amended to increase his $1,500 penalty for late payment of his first week of benefits to $2,000, and to increase his award attorney's fees to $2,500 for the late payment of the first week's benefits and $2,500 for late payment of the proper amount of benefits. The judgment is affirmed in all other respects. We further award Belaire $5,000 in attorney's fees for additional work performed on appeal. The costs of these proceedings are taxed twenty-five percent to the plaintiff-appellant/appellee, Ricky Belaire, and seventy-five percent to the defendant-appellee/appellant, Don Shetler Olds Buick Chevrolet.
REVERSED IN PART; AMENDED IN PART; AND AFFIRMED IN PART.
DECUIR, J., dissents with reasons.
DECUIR, J., dissenting.
I respectfully dissent from the majority opinion with regard to four issues.

CALCULATION OF LAW
First, I must disagree with the majority's resolution of the issue regarding the calculation of the average weekly wage. While the majority correctly asserts that the law at the time of the accident provided that Belaire's bonus and vacation time were to be included in the calculation of the average weekly wage, I do not believe that is true of the retirement benefits. Belaire could not recover the payments to the retirement plan outside of workers' compensation and should not be allowed to do so within the system. The majority position penalizes the employer for prudently funding potential liability in its retirement plan.
The majority, in its technical application of the law regarding the calculation of the AWW, ignores the inequity created by its findings in this case. The record clearly establishes that Belaire was paid his Christmas bonus and vacation time in full during the period he received compensation. Thus, Don Shetler, paid Belaire more than he would have received had the benefits been included in the calculation of AWW. The majority opinion penalizes the employer for its generosity and gives Belaire a double recovery.
This court clearly stated in Lachney v. Johnson & Johnson/Ortho Biotech, 96-724 (La.App. 3 Cir. 2/19/97), 689 So.2d 691, 694:
It is not intended under our law for an employee to be compensated doubly for the same element of damages. Gagnard v. Baldridge, 612 So.2d 732 (La.1993). Double recovery equates to exemplary or punitive damages, which under Louisiana law are prohibited unless expressly authorized by statute. International Harvester Credit v. Seale, 518 So.2d 1039 (La.1988). This principle is so important that the court in Gagnard, faced with the possibility of a double recovery due to the employer's tort liability insurer's failure to appeal, applied an offset against workers' compensation benefits despite having found that the offset should properly be applied to the tort claim. Gagnard, 612 So.2d 732.
Moreover, in discussing related principles we said:
In enacting these provisions, the legislature clearly intended to encourage employers to make voluntary workers' compensation benefit payments. If we were to allow Mr. Duhon to now claim entitlement *733 to benefits based on his employer's voluntary payments, the very purposes of the statute would be thwarted. Employers would be forced to prove a negative, that is, that the employee was not entitled, if they undertook to make voluntary payments. They would thereby be discouraged from paying voluntarily, fearing that doing so would lead to claimants being presumptively entitled. We refuse to lend our judicial imprimatur to such a position. Further, it would undermine public policy, the principles of judicial economy, and the very humane purposes of these statutory provisions.
Snelling Personnel Services v. Duhon, 2000-661 (La.App. 3 Cir. 11/2/00), 772 So.2d 350, 353-354.
The majority opinion both penalizes the voluntary generosity of the employer and countenances double recovery by the claimant. As noted in the dissent to Demeritt v. Trahan, 1999-983 (La.App. 3 Cir. 12/22/99), 755 So.2d 952, 958, "It is true we often construe Workers compensation provisions liberally in favor of injured employees, but we ought not interpret them as mandating absurd results without clear expression from the legislature."

EXCLUSION OF EVIDENCE AS SANCTION
The majority opinion on the violation of La.R.S. 23:1127 misses the point entirely by reducing the issue to the trial court's discretion in the admission of evidence. The record clearly reveals that the trial court used the exclusion of the testimony of Dr. Leoni and Ted Deshotels as a sanction for violations of La.R.S. 23:1127, without regard for the nature or content of the material. Thus, the proper question for this court is whether the trial court abused its discretion in using the exclusion of evidence as a sanction.
I find no authority for the worker's compensation judge's exclusion of evidence as a sanction for violation of La.R.S. 23:1127. The appropriate sanction is actual damages up to $1,000.00 as provided by the statute. Belaire has established no damages and, therefore, I would find that no sanction is authorized. I believe the worker's compensation judge erred in excluding the evidence. Accordingly, I would review the proffered evidence as requested by Don Shetler.

PENALTIES
The majority chooses to affirm the trial court's award of penalties for miscalculation of indemnity benefits. I would reverse that award. Don Shetler discovered and corrected the mistake at the same time it corrected the late payment. Since Belaire was unaware of either problem, there was not an independent "disputed claim" for the miscalculation giving rise to the assessment of an additional penalty. The majority's affirmation of the penalty defeats the statutes purpose by creating a disincentive for employers to correct their own mistakes.
It in effect tells an employer discovering a miscalculation, not noticed by the claimant, to do nothing because if you bring attention to the miscalculation you will be penalized. Whereas, if you do nothing you will only be penalized if the claimant discovers the error. Surely, this is not the message we wish to send to employers.

ATTORNEY FEES
The majority awards $2,500.00 in attorney fees for the miscalculation of benefits and an additional $5,000.00 for prosecution of this appeal. I do not believe these awards are warranted. The record reflects that Don Shetler discovered and corrected the problem before claimant's counsel was retained. The majority's award is *734 nothing more than another penal measure aimed at an employer which tried to do the right thing.

CONCLUSION
The majority opinion unjustifiably penalizes an employer acting in good faith, allows the claimant a double recovery, recognizes a non-statutory sanction for violation of La.R.S. 23:1127, and removes all incentive for an employer to correct its own mistakes. I respectfully dissent.