# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 03-1036

FRED EDLER, JR.

VERSUS

CITY OF NEW IBERIA

************

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - DISTRICT 9,
PARISH OF IBERIA, NO. 02-4335,
GLYNN F. VOISIN, WORKERS' COMPENSATION JUDGE

************

## MICHAEL G. SULLIVAN
## JUDGE

************

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Marc T. Amy, and Michael G. Sullivan, Judges.

Amy, J. concurs.

### AFFIRMED IN PART AND REVERSED IN PART.

William O. Bonin
Attorney at Law
103 East Main Street
New Iberia, Louisiana   70560
(337) 364-5762
Counsel for Plaintiff/Appellee:
     Fred Edler, Jr.

Christopher R. Philipp
Attorney at Law
Post Office Box 2369
Lafayette, Louisiana   70502
(337) 235-9478
Counsel for Defendant/Appellant:
     City of New Iberia

SULLIVAN, Judge.

This is a workers' compensation case in which the City of New Iberia modified Fred Edler, Jr.'s temporary total disability (TTD) benefits to supplemental earnings benefits (SEB), then terminated those benefits after having paid him benefits for 520 weeks. After a trial, the Workers' Compensation Judge (WCJ) found Mr. Edler permanently totally disabled from March 7, 1994 and awarded him penalties in the amount of $20,000.00 and attorney fees in the amount of $30,000.00. The WCJ also denied an exception of prescription filed by Defendant. For the following reasons, the WCJ's judgment is affirmed in part and reversed in part.

### *Facts*

The facts are not in dispute. Fred Edler, Jr. was employed as the assistant fire chief for the City of New Iberia on May 11, 1992, when he injured himself at work. His injury prevented him from continuing his employment; he was fifty-four years old. He retired from the fire department in 1993 when his disability benefits ran out. He has remained under the care of various physicians and has not worked since his injury. He was sixty-five years old at the time of trial.

Mr. Edler completed the tenth grade in high school. Thereafter, he enlisted in the Army, where he served for three years. During his service, he received his high school diploma and was trained as an "independent medic," which allowed him to work independently of a physician as an emergency medical technician. He received an honorable discharge.

After the Army, Mr. Edler worked as a pipe inspector, a member of a seismograph crew, a "repo" agent for a finance company, and a life insurance salesman. He went to work for Defendant as a fireman on July 4, 1961. As a fireman, Mr. Edler worked as a fireman first class, driver, captain, and assistant fire chief. In

1963, he was injured at work and underwent back surgery which was successful. He returned to work and continued working until his May 1992 injury.

While a fireman, Mr. Edler attended a number of different courses for further training and career development. He was certified as an instructor for cardiopulmonary resuscitation and first aid. He also completed an introduction course to radiation monitoring, attended fire training courses at Louisiana State University, and attended training courses with the Louisiana State Police for bombs and explosives. In 1991, he received an award for distinction and outstanding service from the American Heart Association for training courses he taught to other firemen.

Risk Management, Inc. (RM) managed Mr. Edler's compensation claim for Defendant. It paid him TTD benefits at the maximum rate of $295.00 per week from the time of his injury until April 7, 1994, when it modified the TTD benefits to SEB. Mr. Edler was notified of the modification; he did not object to it. The effect of the modification was not explained to him; it did not affect the amount of benefits he received. SEB were paid until June 2, 2002, when they were discontinued.

Mr. Edler's treatment for his injury has been extensive and ongoing. On May 20, 1992, Dr. Ricardo Leoni, a Lafayette neurosurgeon, performed extensive surgery on Mr. Edler's back. He removed a herniated disc at L4-5 and performed bilateral spinal stenosis surgery at L2-3. As a result, Mr. Edler has a neurological deficit, back pain, pain in his left leg, and chronic weakness and numbness in his left leg. In June 1994, Dr. Leoni had Mr. Edler undergo a functional capacity examination (FCE). Mr. Edler was unable to complete the examination, and the examiner opined that he could not perform even sedentary work. Mr. Edler remained under Dr. Leoni's care until February 13, 1997. Throughout his care of Mr. Edler, Dr. Leoni was of the opinion that he could not be gainfully employed.

In February 1997, Mr. Edler was examined by Dr. William L. Fisher, Jr., a neurosurgeon in Baton Rouge, at RM's request. Dr. Fisher agreed with Dr. Leoni that Mr. Edler could not work.

Thereafter, Mr. Edler was treated by Dr. Robert LaHasky in New Iberia until he retired from his medical practice. In March 2000, Mr. Edler sought treatment from Dr. Therese Ritter, another New Iberia physician. Dr. Ritter had him undergo two FCEs. The restrictions established by Dr. Ritter following these FCEs are discussed below.

In December 2002, Dr. Ritter referred Mr. Edler back to Dr. Leoni due to complaints of severe pain on his right side. Dr. Leoni ordered an MRI which revealed stenosis at L2-3, L3-4, and L4-5. He testified that the stenosis at L3-4 and L4-5 was "fairly severe" and that Mr. Edler's status was about the same as it was in February 1997. Dr. Leoni noted Mr. Edler has weakness in his left leg and foot and numbness in his left foot. In his opinion, Mr. Edler's disability status had not changed, and he remained totally disabled. Dr. Leoni further testified that the changes in Mr. Edler's back may require surgery, a decompression with a fusion, but he advised Mr. Edler that he should tough it out for as long as possible.

Mr. Edler has never been released from the care of his physicians, and his physical status has worsened. He has never been released to work with restrictions which would allow him to find employment in a competitive market. All of the restrictions established by his treating physicians limit any attempt at work to a stair-step approach, i.e., four hours per day per week, increased to six hours per day per week, increased to eight hours per day per week. Additional restrictions regarding sitting, standing, walking, crawling, carrying, and lifting further limit his ability to work.

RM hired Thomas Bott, a vocational rehabilitation expert, to work with Mr. Edler to return him to work. During the course of this matter, Mr. Bott expended 1200 hours trying to find a position for Mr. Edler that fell within his physical and educational limitations and the restrictions imposed by his physicians. He opened and closed Mr. Edler's file a number of times throughout the course of this matter. He was unsuccessful in finding employment for Mr. Edler and reported on more than one occasion to RM that, in his opinion, Mr. Edler cannot work and is totally disabled.

Even though Mr. Edler was never released from his physicians' care and its own expert was of the opinion that he was totally disabled, RM modified his TTD benefits to SEB on March 7, 1994, then terminated his SEB on June 2, 2002.

On June 13, 2002, Mr. Edler filed this disputed claim for compensation, seeking a reinstatement of benefits. He alleged he was permanently totally disabled (PTD) or TTD and entitled to penalties and attorney fees for the discontinuance of his benefits. Defendant countered that it had paid Mr. Edler more than 520 weeks of TTD and SEB and that he is not TTD or PTD. The matter was tried before the WCJ on February 7, 2003. The WCJ ruled in favor of Mr. Edler as set forth above.

Defendant assigns as error the WCJ's awards of PTD benefits, penalties and attorney fees, and the denial of its exception of prescription.

### *Standard of Review*

We review factual conclusions of the WCJ, including those relating to the sufficiency of the evidence, for manifest error. *Ambrose v. New Orleans Police Dep't Ambulance Serv.*, 93-3099, 93-3110, 93-3112 (La. 7/5/94), 639 So.2d 216; *Alexander v. Pellerin Marble & Granite*, 93-1698 (La. 1/14/94), 630 So.2d 706. However, when determining whether a WCJ committed an error of law, we review to determine

4

whether the ruling was legally correct. *Belaire v. Don Shetler Olds Buick Chevrolet*, 02-1152 (La.App. 3 Cir. 6/4/03), 847 So.2d 723.

*Discussion*

*Permanent Total Disability*

Defendant asserts that Mr. Edler did not prove by "clear and convincing evidence" that he is not capable of performing sedentary to light employment within the restrictions imposed by Dr. Ritter. Louisiana Revised Statutes 23:1221(2)(c) provides the burden of proof that a workers' compensation claimant, seeking an award of permanent total disability benefits, must satisfy:

> [W]henever the employee is not engaged in any employment or self-employment . . ., compensation for permanent total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment, including, but not limited to, any and all odd-lot employment, sheltered employment, or employment while working in any pain, notwithstanding the location or availability of any such employment or self-employment.

Mr. Bott testified that he opened his file on Mr. Edler in May 1994. He found Mr. Edler to be pleasant, cooperative, and credible. He closed the file shortly thereafter because the results of the June 1994 FCE revealed that Mr. Edler could not perform even sedentary work. In 1996, he was instructed to reopen Mr. Edler's file. He testified that he worked to develop a job with Defendant pursuant to restrictions established by Dr. Leoni. Mr. Edler attempted but could not perform the job.

Mr. Bott testified that he again tried to find employment for Mr. Edler after he underwent the two FCEs ordered by Dr. Ritter. As a result of those FCEs, Mr. Bott testified that Dr. Ritter limited Mr. Edler to trying sedentary to light duty in a warm environment for four hours per day but not all at one time. Mr. Edler had to be able to change positions as needed and could not lift/carry anything greater than ten pounds

5

and could not do any significant walking, bending, or crawling. Any work attempt was further limited as follows: no floor to waist lifts; no crouching; no squatting; no balancing activities; lifting limited to thirty pounds for horizontal lift and left, right, or front carrying; and lifting limited to twenty pounds from twenty-six inches off of the floor to his waist. Due to the numbness and weakness in his left leg, Mr. Edler would also have to use a brace on his left foot, and he would have to wear a lumbar corset for his back. Further, he was to start with four hours per day per week for four weeks. If he tolerated this, he could increase to six hours per day for four weeks, then to eight hours per day up to a maximum of forty hours per work week thereafter.

Mr. Bott and Della Hildebrand, RM's representative who handled Mr. Edler's claim, both agreed that no employer, other than an original employer, would allow an employee to work in the stair-step manner outlined by Dr. Leoni and Dr. Ritter. Mr. Bott attempted to do this on two occasions, requesting that the City find a position suitable for Mr. Edler; the attempts were unsuccessful.

When deposed on December 5, 2003, Mr. Bott testified that he had attempted without success to find work for Mr. Edler that fell within the restrictions established by Dr. Leoni and Dr. Ritter. He admitted that, after working with Mr. Edler for some 1200 hours, he determined that there was no employment, including self-employment, available to him. Yet, at trial, he testified regarding two jobs that he thought Mr. Edler could *"possibly"* perform. The first was woodcarving instructor at University of Louisiana at Lafayette in its leisure learning classes. However, he explained no such position currently exists and that Mr. Edler would have to approach ULL to create the position and hire him for the position. He had no insight as to the likelihood of the creation of or viability of such a position and described it as "very theoretical."

6

The second job was a part-time 911 operator for the City of New Iberia or the Iberia Parish Sheriff's Office. Mr. Bott admitted that he had previously considered a full-time 911 position for Mr. Edler but ruled it out due to the fact that it required a civil service examination, explaining that he believed the length of time Mr. Edler had been out of school was an impediment to his ability to pass the examination. However, he testified at trial that the part-time position did not require a civil service examination; therefore, he changed his mind about it being a viable position for Mr. Edler. Mr. Bott never informed Mr. Edler of this position, even though he testified that he felt he was working for Mr. Edler's interest, not Defendant's.

Mr. Bott's testimony regarding the part-time 911 position did not consider that Mr. Edler's physical condition has worsened, such that he now has "fairly severe" stenosis in his lower back. Dr. Leoni testified that the stenosis prevents Mr. Edler from walking, standing, or sitting for long periods of time and will require that he lie down frequently because it is the most comfortable position for him. He remains of the opinion that Mr. Edler cannot work. In light of Mr. Edler's worsened medical condition, we place no weight on Mr. Bott's testimony regarding the part-time 911 position.

Defendant argues the WCJ erred because the focus in this matter should be on Mr. Edler's physical ability to do some work and not on the unsuccessful rehabilitation efforts. This argument fails in light of the supreme court's decision in *Comeaux v. City of Crowley*, 01-32, pp. 12-13 (La. 7/3/01), 793 So.2d 1215, 1222, where the supreme court explained:

> This case requires that we construe La.Rev.Stat. 23:1226, mandating an attempt at rehabilitation before a finding of permanent total disability is made, *in pari materia* with La.Rev.Stat. 23:1221(2), defining permanently, totally disabled. Under the scenario presented in this case, involving an employee who has unsuccessfully attempted rehabilitation, it would defy logic and render La.Rev.Stat. 23:1226

7

meaningless to exclude from consideration the employee's inability to be educated or retrained in determining if such an employee is permanently, totally disabled. . . .

Obviously, the Legislature intended, by imposing in La.Rev.Stat. 23:1226 a mandate that the prospects of rehabilitation be explored before an employee is classified as permanently, totally disabled, that the results–negative as well as positive–of such attempted rehabilitation be considered in ultimately determining disability status. As plaintiff aptly points out, a contrary conclusion would result in only paraplegics falling within the permanently, totally disabled status. That the Legislature could not have so intended such a result is evidenced by the separate statutory presumption set forth in La.Rev.Stat. 23:1221(4)(j), which provides a presumption of permanently, totally disabled for an employee that is paraplegic.

Accordingly, when, as in this case, such attempt at rehabilitation fails, the employee's lack of ability to be educated or retrained cannot be ignored.

We find no error with the WCJ's determination that Mr. Edler proved by clear and convincing evidence that he is PTD.

*Prescription*

Defendant modified Mr. Edler's benefits from TTD benefits to SEB on April 7, 1994. It filed an exception of prescription, urging that Mr. Edler's failure to complain of the modification for eight years was too long.

La.R.S 23:1209 (emphasis added) provides in pertinent part:

A. In case of personal injury, including death resulting therefrom, all claims for payments shall be forever barred unless within one year after the accident or death the parties have agreed upon the payments to be made under this Chapter, or unless within one year after the accident a formal claim has been filed as provided in Subsection B of this Section and in this Chapter. *Where such payments have been made in any case, the limitation shall not take effect until the expiration of one year from the time of making the last payment*, except that in cases of benefits payable pursuant to R.S. 23:1221(3) this limitation shall not take effect until three years from the time of making the last payment of benefits pursuant to R.S. 23:1221(1), (2), (3), or (4).

Defendant modified Mr. Edler's TTD benefits to SEB on April 7, 1994, then on June 2, 2002, it terminated his SEB. On June 13, 2002, Mr. Edler filed a claim,

8

seeking TTD benefits or PTD benefits. He amended his claim on January 13, 2003, asserting the modification of his benefits was improper and that he is entitled to penalties and attorney fees because Defendant's actions were arbitrary and capricious.

Under the clear wording of Section 1209, Mr. Edler's claim is not prescribed, as less than one month elapsed between the termination of his benefits and the filing of his claim and only seven months elapsed between the termination of benefits and the amendment of his claim. Defendant's argument, which is based on the first sentence of Section 1209(A), ignores the second sentence which provides that when payments have been made the time limitation is calculated from the last payment. In this case, that is June 2, 2002.

Defendant asserts Mr. Edler agreed to the modification from TTD benefits to SEB; therefore, it "should not be construed as interrupting prescription as to Mr. Edler's claim for modification." We reject this contention. Mr. Edler was informed of the modification of his TTD benefits to SEB; however, he testified that he was not informed of what the modification actually meant to him, i.e., his TTD benefits could be terminated after 104 weeks because he had retired and his SEB could be terminated after ten years. Furthermore, the amount of his SEB was the same as his TTD benefits, an indication that the modification was not against his interest. Without knowledge of the effect of the modification, we find Mr. Edler did not agree to the modification.

Defendant also argues it would be an injustice to allow Mr. Edler to proceed with his claim for penalties and attorney fees eight years after the modification was made. Initially, we note that Defendant's unilateral modification of Mr. Edler's benefits is not provided for by law. Furthermore, the only evidence regarding Mr. Edler's medical condition at the time of the modification was that he could not

9

work. This court sees Defendant's modification of Mr. Edler's benefits as an attempt to take advantage of an unsuspecting, unrepresented claimant. Defendant modified Mr. Edler's benefits at its own peril, and we will not consider its complaints based in equity now that it has been caught in its own trap.

We find no error in the WCJ's denial of Defendant's exception of prescription.

***Attorney Fees and Penalties***

Defendant asserts the WCJ erred in awarding penalties and attorney fees to Mr. Edler. Alternatively, it argues that, if the award of attorney fees is correct, the award is too high.

Defendant first argues that the modification of TTD benefits to SEB benefits was not a termination of benefits and that pursuant to La.R.S. 23:1201.2 penalties are not available to Mr. Edler. We agree. *See Brister v. Sears Authorized Retail Dealer,* 99-945 (La.App. 3 Cir. 12/8/99), 753 So.2d 871, *writ denied*, 00-77 (La. 2/25/00), 755 So.2d 887, where this court held that a modification of TTD benefits to SEB was a discontinuance of benefits under La.R.S. 23:1201.2. Louisiana Revised Statute 23:1201.2 provides for the payment of "all reasonable attorney fees" by the employer or insurer who arbitrarily, capriciously, or with probable cause discontinues benefits. Relying on *Williams v. Rush Masonry,* 98-2271 (La. 6/29/99), 737 So.2d 41, *Brister*, 753 So.2d 871, determined that penalties are not available for the discontinuance of benefits. Accordingly, the WCJ's award of penalties in this matter was error.

With regard to attorney fees, Defendant argues Mr. Edler failed to prove that its modification of his benefits was arbitrary and capricious. On this issue, it first urges that Mr. Edler's failure to complain of the modification earlier puts it at a disadvantage because the RM representative who made the modification is no longer employed by RM. Defendant unilaterally modified Mr. Edler's benefits at its own

10

peril; the impropriety of the modification is well documented by the record. This complaint is without merit.

Noting that eleven months had elapsed between the April 1993 visit and the March 1994 visit, Defendant urges that Mr. Edler was no longer receiving "continued, regular treatment" and the modification was justified by La.R.S. 23:1221(1)(d), which, at the time of Mr. Edler's injury, provided:

> An award of benefits based on temporary-total disability shall cease when the physical condition of the employee has resolved itself to the point that a reasonably reliable determination of the extent of disability of the employee may be made, and the employee's physical condition has improved to the point that continued, regular treatment by a physician is not required, or six months after the injury, whichever first occurs. If the claimant contends that his disability is of a temporary nature, but extends beyond this six-month period, he must submit a claim for extension of the period of temporary-total disability under La.Rev. Stat. Ann. §23:1310.3.

When Defendant modified Mr. Edler's benefits, the only medical opinion it had regarding his ability to work was that of Dr. Leoni. In March 1994, Dr. Leoni was of the opinion that Mr. Edler's medical condition was "static" and that there was not "much he can do at this time." At the time of Mr. Edler's prior visit in April 1993, Dr. Leoni found him to have attained maximum medical improvement. However, noting severe weakness in Mr. Edler's left leg and his trouble with walking, Dr. Leoni stated, "I don't think he could do any type of work" and "I think he will remain disabled." Accordingly, Defendant knew Mr. Edler could not work and that its modification to SEB was improper.

Even when one considers the eleven month interval in Mr. Edler's visits to Dr. Leoni between April 1993 and March 1994, Defendant's argument is untenable. In May 1994, two months after the modification, Mr. Edler returned to Dr. Leoni. After that visit, Dr. Leoni reported again to RM, "There's no way he can do any type

of work at this time." Then, less than one month later, Mr. Edler attempted an FCE which he could not complete. Dr. Leoni reported to RM on June 14, 1994:

> I think from my standpoint we have tried now for nearly 2 years to get Fred back to work with therapy, etc. It hasn't worked. From my standpoint he's got enough neurological deficit and pain that he should be made totally disabled. I plan to see Fred back but again, I don't think he can do any type of work.

Even if Defendant's modification was proper in April 1994, this report proved otherwise, and Defendant should have reinstated Mr. Edler's TTD benefits. *See Brister*, 753 So.2d 871 and *Joiner v. Newburg Venture*, 94-1533 (La.App. 3 Cir. 5/3/95), 657 So.2d 206.

Defendant next argues that its voluntary payment of TTD benefits to Mr. Edler should be viewed as an award of benefits, and, pursuant La.R.S. 23:1221(1)(d), the burden was on Mr. Edler to seek an extension of benefits beyond the initial six months of benefits. RM did not modify Mr. Edler's benefits until April 7, 1994, almost two years after his injury. We find this continuous payment of benefits "tantamount to an implied stipulation to a longer period of disability," so that Mr. Edler did not have to seek an extension of benefits. *See Flintroy v. Scott Cummins Salvage*, 36,857 (La.App. 2 Cir. 3/10/03), 839 So.2d 1231, *writ denied*, 03-1068 (La. 6/6/03), 845 So.2d 1093.

For these reasons, we find no error with the WCJ's determination that Defendant's modification of Mr. Edler's benefits from TTD to SEB was arbitrary and capricious.

Defendant acknowledges the only restriction on an award of attorney fees is that it must be reasonable. *See* La.R.S. 23:1201.2. Counsel stipulated at trial that Mr. Edler's attorney spent more than 195 hours in this matter. In light of his

12

experience of more than fifty years as a litigator, the work expended, and the result achieved, we find $30,000.00 to be a reasonable fee.

The judgment of the workers' compensation judge of benefits and attorney fees in favor of Mr. Edler is affirmed. The award of penalties is reversed. All costs of this appeal are assessed to the City of New Iberia.

**AFFIRMED IN PART AND REVERSED IN PART.**